ATTORNEY'S NAME: Riley, Michael 17116
AND ADDRESS: 833 Baronne St,
New Orleans LA 70112-2995

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO: 2011 – 06610 1 DIVISION: " K " SECTION: 5

GAUDET, BRIDGETTE ET AL VERSUS AMERICAN HOME SHIELD CORPORATION

RECEIVED 2011 JUL 21 A II 41 E. B. R. PARISH ... OFFICE

## CITATION

TO: AMERICAN HOME SHIELD CORPORATION
THROUGH: CT CORPORATION SYSTEMS
5615 CORPORATE BLVD., SUITE 400B

BATON ROUGE LA

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the petition
FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF W/EXHIBITS A&B

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default

**ADDITIONAL INFORMATION**

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 504-561- 8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.

***********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE***********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA** June 23, 2011 .

**Clerk's Office, Room 402, Civil Courts**
**421 Loyola Avenue**
**New Orleans, LA**

**DALE N. ATKINS, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
by V. Smith
**Deputy Clerk**

JUL 06 2011
I made service on the named party through the CT Corporation by tendering a copy of this document to ... BASS
☐ JULIE CHISM ☐ ... LITTLETON ☐ RODERICK THOMAS
C. Cummins
Deputy Sheriff Parish of East Baton Rouge, Louisiana

**SHERIFF'S RETURN**
(for use of process servers only)

PERSONAL SERVICE | DOMICILIARY SERVICE

On this _______ day of ____________
___________ served a copy of the w/i petition
FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF W/EXHIBITS A&B

On
AMERICAN HOME SHIELD CORPORATION

THROUGH: CT CORPORATION SYSTEMS

Returned same day
No.
Deputy Sheriff of ____________
Mileage: $____________

DCW / ENTERED / ____________
PAPER RETURN
01 / ________ / 01
SERIAL NO. DEPUTY PARISH

On this _______ day of ____________
___________ served a copy of the w/i petition
FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF W/EXHIBITS A&B

On
AMERICAN HOME SHIELD CORPORATION

THROUGH: CT CORPORATION SYSTEMS

by leaving same at the dwelling house, or usual place of abode, in the hands of ____________
a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM / HER the said ____________
AMERICAN HOME SHIELD CORPORATION

being absent from the domicile at time of said service.
Returned same day
No.
Deputy Sheriff of ____________

EXHIBIT A

VERIFIED
Jade Scott
Deputy Clerk 4.11

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**CASE NO.:** 11-6610 **DIVISION " "** K
**(JURY TRIAL REQUESTED)**

**BRIDGETTE, the wife of, and WILLIAM GAUDET**

**VERSUS**

**AMERICAN HOME SHIELD CORPORATION, Defendant,**

SECTION 5

JURY

**FILED:** ______________________ **DEPUTY CLERK**

DALE N. ATKINS
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112
504-592-9100

**NATIONWIDE CLASS ACTION PETITION FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**

CASE#: 2011 - 06610 SEC.: 5
RECEIPT#: 284160

| | | PAID | BAL |
|---|---|---|---|
| CLASS ACTION | $ 2641.00 | $ 2641.00 | $ 0.00 |
| | $ 21.50 | $ 21.50 | $ 0.00 |
| INDIGENT LEGAL FEE | $ 10.00 | $ 10.00 | $ 0.00 |
| REQUEST FOR TRIAL BY JURY | $ 780.00 | $ 780.00 | $ 0.00 |

TOTAL PAID CASE # 201106610: $3452.50
RECEIPT TOTAL $3,452.50
AMOUNT RECEIVED $3,452.50
CHANGE DUE $.00

**NOW INTO COURT**, through undersigned counsel, comes Plaintiffs, William and Brigette Gaudet, individually and on behalf of all others similarly situated, who respectfully file this Nationwide Class Action Petition for Damages and Declaratory and Injunctive Relief against Defendant American Home Shield Corporation ("American Home"), requesting relief as follows and averring the following allegations:

6/23/11 1 c/c rnt VS

**VENUE AND JURISDICTION**

I.

Made Defendant is American Home Shield Corporation ("American Home"), a subsidiary of ServiceMaster Co., upon information and belief, a company licensed to do and conducting business in the State of Louisiana, and can be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA 70808.

Plaintiffs, William and Brigette Gaudet persons of full age of majority and a resident of the State of Louisiana and Orleans Parish, brings this action on behalf of himself and all others similarly situated.

Venue is proper in this jurisdiction under Louisiana Code of Civil Procedure Art. 74 as Orleans Parish is where the wrongful conduct pertaining to Plaintiff occurred; La. C.C.P. art. 76 as Orleans Parish is where the Plaintiff is domiciled; La. C.C.P. art. 76.1 as the contract was executed and work was to be performed under the terms of the contract in Orleans Parish.



6/23/11
VERIFIED
VSmd

Jurisdiction is proper in Civil District Court, Parish of Orleans, as the Gaudet's damages do not exceed $75,000.00, exclusive of interest and cost.

## FACTUAL BACKGROUND

II.

Plaintiffs institute this class action against Defendant on their own behalf and as a representative of a class consisting of all homeowners who were/are aggrieved by way of American Home's nationwide policy and practice, through harmonized and consistent marketing materials, to breach homogeneous written home warranty contracts while concurrently violating its duty of good faith in inspecting and covering claims, in correlation with American Home's ultimate goal to refuse to pay claims under executed insurance contracts. American Home's wrongful conduct is the common course of conduct applicable to all class members.

American Home's nationally marketed product is a home warranty policy sold to residential homeowners throughout the United States, which *inter alia*, warrant "major components and appliance systems of the home" against breakage due to normal wear and tear or by reason of the component's/appliance's age. Currently, American Home has more than 1.3 million home warranty policies in force nationwide. Pursuant to the terms and conditions of the policies, American Home warrants "major components" including a home's plumbing system, water heater, electrical system, and the heating, ventilation, and air conditioning system ("HVAC system").

American Home's primary guarantee through its marketing efforts and business practices has been to expressly and affirmatively provide coverage for repairs and replacements of all covered appliances and systems, including the older components, for the policy year.

American Home's warranty explicitly states four general factors the American Home authorized service contractor will take under advisement when evaluating whether the systems or appliances are covered under the policy for repair or replacement. The systems and appliances must be: (A) located within the confines of the main foundation of the home or attached or detached garage (with the exception of the exterior well pump, air conditioner, and pool/or spa equipment, if selected); (B) inoperative due to normal wear

and tear; (C) in good working order on the effective date of the contract; and (D) properly maintained and installed throughout the term of the contract for proper diagnosis.

American Home further markets and assures on its website, and in the materials provided to its policyholders that "age" of an appliance or component is not a concern as long as the component or appliance is in "good working order and properly maintained at the time coverage is purchased". The Defendant guarantees that if the insured appliance or component can not be fixed, it will be replaced.

Despite these obligations and various commitments, American Home has denied claims made by Plaintiff and class members under its customary grounds of "lack of maintenance", "pre-existing condition", or "failure to clean". Coincidentally, although American guarantees coverage if the component or appliance is in good working order and properly maintained at the time coverage is purchased, American Home never initially inspects the insured components or appliances at the time coverage is purchased to verify the satisfactory nature of the system. Instead, when a claim is actually made on the malfunctioning appliance/component by a policyholder, American Home dispatches a contractor that most frequently does nothing more than visually look at the outside portion of the unit, denies the claim based on the grounds of "lack of maintenance", "pre-existing condition", or "failure to clean," without any credible evidence that the alleged lack of maintenance was the proximate cause of the defect, which prompted the claim. Hence, American Home's customary course of dealing to avoid replacement of more expensive components or appliances, such as air conditioning units, based on a cursory inspection of the components or appliances and without any valid evidence to support such denials is arbitrary and capricious and a violation of the terms of its own contract.

Secondly, while a provision does exist in the American Home policy regarding the exclusion from coverage of damage "caused by...failure to clean or maintain", historically and up to the present day, American Home has routinely denied coverage when there is any indication that the component/appliance is not new, in spite of whether the damage to the appliance/component was caused by some other factor. For example, if an appliance/component shows signs of failure due to age or normal wear and tear during an inspection by American Home's agents, but also possesses de minimis indications of uncleanness, American Home, without hesitation, will point to the failure of maintenance

as the primary ground the component/appliance failed. Additionally, American Home has implemented a routine policy to avoid repairs or replacements to air conditioning units by advising contractors to simply apply coolant (Freon) to the unit.

Plaintiffs aver that all claims reported by them, and submitted to American Home for the repair/maintenance of their home appliances and components, were necessary repairs, the appliance/component was in good working order at the time coverage was purchased, and therefore covered under the terms and conditions of the home warranty policies. Without repair and maintenance, Plaintiff and the class members' major home components faced further deterioration and increased future costs of repair or replacement.

III.

The claims of Plaintiff and class members are separate from the class certified by the United States District Court for the Northern District of Alabama's Southern Division in the *Fraught v. American Home Shield Corporation* matter, because the class herein can not be bound by conduct, primarily American Home's wrongful denials of their repair or replacement claims that occurred subsequent to the Settlement Agreement entered and class period in the class action approved in the Alabama federal court and that class action; and, the orders of that Court specifically exclude from the release, which is not yet effective or binding as to any class member, claims that had not arisen or events that took place after that Settlement Agreement was executed. Additionally, the Plaintiff and class members herein are outside the class period identified in the Alabama court's certified class, which is limited to a class period of July 24, 2001 and October 19, 2009. However, based on the continuing wrongful and deceitful practices by American Home, which is contrary to the conditions of that Settlement agreed to by AHS, an issue remains as to whether the *Faught* class members should be given another opportunity to opt out/exclude themselves from that Settlement.

Furthermore, one major premise identified by the court in approving the certified class action settlement herein mentioned, and in fact incorporated into that Court's "Final Judgment Granting Final Approval of the Class Action Settlement Agreement Between the Class and Defendant American Home Shield Corporation" signed on April 27, 2010, was American Home's declaration that it would modify its business practices, including but not limited to changing its process and proof for such denials and make a dedicated

distribution of written materials to its Contractor Network conveying the "importance American Home Shield places on honoring the terms of coverage". (See Attached Exhibit 1, "Status Report Regarding Business Practice Changes, filed and submitted to the Federal District Court for the Northern District of Alabama on March 9, 2010). However, the business practices and modus operandi of American Home asserted and maintained by the certified class in the Alabama federal court and re-asserted in this Court, remain in full effect today. The allegedly modified practices and procedures of American Home pursuant to the proposed class settlement in United States District Court for the Northern District of Alabama's Southern Division have not been modified but rather have continued and have simply persisted in "business as usual".

The company continues to build incentives into its relationships with contractors, essentially increasing the volume of referrals an individual contractor receives based on the average cost per customer. American Home assigns grades to contractors based on factors such as the percentage of customer claims denied and average cost of every invoice submitted by the contractor. Recently, American Home announced another $1.2 million bonus reward program for contractors. Consequently, American Home continues to actively pursue the goal of influencing contractors to deny claims without proper investigation and it possesses full knowledge of the effects these practices will have on American Home warranty policyholders.

American Home has continuously shunned the opportunity to establish a respectable business reputation after numerous lawsuits filed against its culture of bad faith denials in home warranty business. Another example of American Home's failure to modify its business practices is illustrated by its continuing and repetitive conduct of denying claims on baseless grounds despite recently settling a class action lawsuit..

**<u>FACTS RELATING TO PLAINTIFF</u>**

IV.

Plaintiffs, Mr. and Mrs. Gaudet, purchased their home located at 38 Lakewood Place, New Orleans, La., 70131 on or about August 15, 2007. The residence was only 8 years old when purchased, and an inspection as part of the sale by an engineer of the air conditioning system, confirmed the all units and parts were in good working condition. Plaintiffs purchased a home warranty contract with American Home and coverage began

on their home on August 16, 2007 (See attached Exhibit 2, Contract # 17004364). Shortly thereafter, just beyond one month after coverage, the air condition system failed and was in need of repair or replacement. Despite being well aware that the air condition unit had been inspected just before the request for service, and subsequent confirmation that it was in good working condition as of the time the coverage took effect, American Home denied the claim. The claim was denied improperly and in bad faith with an unsubstantiated claim that there was "a pre-existing condition" after American Home's agent did nothing more than visually inspect the outside portion of the unit. Mr. and Mrs. Gaudet, facing the stifling summer heat, were obligated to purchase a new air condition unit at a cost of approximately $7,000.

The coverage under this American Home policy contract was continued and renewed yearly, with all premiums paid by the Gaudets. In April 2010, the second air condition unit was not blowing cold air and a claim was made with American Home, who after several calls and requests for service, finally dispatched a contractor, who stated that the unit was in need of Freon. The contractor proceeded to add Freon. There was no mention by the contractor that the air condition unit was not properly maintained or any other grounds that would allow American Home to deny any claim related to that unit.

Shortly thereafter, on or about late June 2010, the second unit had the same issues as reported previously, and another claim was made to American Home by the Gaudets. Once again, after repeated calls and requests for service to no avail, a contractor was sent out in July, 2010. The contractor was advised of the prior work conducted by an agent of American Home on the unit. That contractor, upon information and belief, was Trademasters, Inc. (See Exhibit 3, email communication from AHS) simply visually inspected the unit and said a replacement unit was necessary. After calling American Home, the contractor then told Mrs. Gaudet that American Home had denied the claim because "the unit was not maintained" after American Home's agent did not nothing more than visually inspect the outside portion of the unit. American Home possessed no evidence that a "lack of maintenance" was the cause of the defect(s) requiring replacement. When the contractor was asked if he could inspect the other parts of the system located inside the house to determine if other parts of the HVAC system were the cause of the problem and/or would correct the problem, the contractor indicated that he

would have to return at a later time and bill the Gaudets for an additional service fee of $60. This charge would be imposed subsequent to a $60 service fee paid by the Gaudets for the initial inspection.

Once more, due to the stifling summer heat, Mr. and Mrs. Gaudet were forced to hire yet another contractor and pay approximately $7,500 to replace the secondary unit. See attached as Exhibit 4, invoice for work and new unit). The contractor who replaced the unit did not find a "maintenance problem" as the cause for the needed replacement, and confirmed that American Home repeatedly and customarily used the aforementioned improper and unsupportable excuse to deny repairs and replacements.

**CLASS ACTION ALLEGATIONS**

V.

The Plaintiff and class members are entitled to have their causes of action maintained as a class action and the actions are appropriate for determination under the Louisiana Code of Civil Procedure Louisiana Code of Civil Procedure Article 591, *et seq.*

The proposed three nationwide classes, which may be amended from time to time as discovery progresses, would be defined as follows:

> All current or former American Home Shield Corporation home warranty policyholders, who have made a claim for repair or replacement from October 20, 2009 to the present date, pursuant to the terms and conditions in their policy contracts, and to whom insurance coverage is due or owed as a result of a wrongfully denied claim for repair or replacement of a home component, appliance, or HVAC system, on an alleged failure to clean or maintain or for a pre-existing condition.

VI.

Furthermore, Plaintiff and class members' causes of action should be maintained as a nationwide class action, pursuant to La. C.C.P. Article 591, *et seq.*, because American Home's conduct is the common course of conduct applicable to all class members and for the following non-exclusive reasons:

**a. Numerosity**

The joinder of all individuals who are purchasers of the heretofore described policies in one lawsuit is impracticable, and the disposition of claims in this transaction will provide a substantial benefit both to the parties and to the Court. The exact number and identities of the class Plaintiffs are unknown at this time, and can only be ascertained

through appropriate discovery, however Plaintiffs are of information and belief that the class of Plaintiffs clearly consists of thousands of persons presenting a level of numerosity better handled through the class action procedure.

**b. Common Questions of Law and Fact**

This Petition seeks a declaration and relief of the Court that is common to all class members and there exists a common nature among the rights sought to be enforced on behalf of the Plaintiff class among the class representative and the unnamed members of the Plaintiff class. The questions of law and fact applicable to the entire Plaintiff class predominate over questions, which may affect individual members, including the following non-exclusive particulars:

1) Whether American Home violated the law as alleged herein;

2) Whether American Home acted pursuant to a common course of conduct and systematic practice in bad faith with respect to its practice of contravening its "boilerplate" written home warranty contracts;

3) Whether American Home plotted and implemented a policy of systematically denying claims in direct breach of its "boilerplate" written home warranty contracts, as alleged herein;

4) Whether American Home is liable for damages and losses for its wrongful conduct as alleged herein; and

5) Interpretation of the home warranty contract, including the inapplicability of particular exclusions to the common set of facts alleged herein.

**c. Adequate Representation**

Plaintiffs will fairly and adequately represent the interests of the class. The named Plaintiffs are representative of the Plaintiff class and members of the Plaintiff class and is so situated as to provide adequate representation for the unnamed Plaintiff class members. The class representatives herein are represented by skilled attorneys who are experienced in the handling of class action litigation and who may be expected to handle this action in an expeditious and economical manner to the best interest of all members of the class.

**d. Typicality**

The claims of the class representative as named herein are typical of the claims of the class members he seeks to represent in that they all seek to establish the damages they

sustained that arose from American Home's usual and customary 'way of doing business', conduct that violated the law and to ensure an appropriate application and interpretation of the home warranty contract. The losses suffered by the Plaintiff class members were directly caused by American Home's arbitrary and capricious conduct in violation of the law as alleged herein.

**e. Superiority**

The Louisiana Class Action Procedure affords a superior vehicle for the fair and efficient disposition of the proposed class because, among other reasons, certain class members likely are unaware of the legal issues involved in this action and are unaware of the misconduct upon which this action is premised, making individual litigation and vindication of those class members' contractual rights unlikely. For those who may litigate, the expense of prosecuting individual claims might be prohibitive in light of the typical class members' losses. Class treatment is also more likely to facilitate the dissemination of their rights and a forum in which to seek redress. The prosecution of separate claims by individual members of the class would create a substantial risk of inconsistent adjudications concerning individual members of the class that would in practical terms be dispositive of, or would substantially impair or impede, the ability of other class members' to protect their interests. Sound judicial reasoning together with judicial economy and efficiency tilt in favor of class treatment as opposed to individual actions by each policyholder. In addition, American Home has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## DECLARATORY JUDGMENT

VII.

The Plaintifsf and class members repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

An actual controversy exists between the class and the Defendant concerning American Home's failure to provide coverage to their policyholders of the home warranty for repairs of home components/appliances.

Consequently, under the circumstances, it is necessary and appropriate for the Court to declare the Plaintiff class's rights through the assigned home warranty policies of

present and future recipients of American Home's warranties and American Home's rights and duties under the policies pursuant to the Louisiana Code of Civil Procedure.

The policyholders have given timely notification to American Home and made timely demands upon the Defendant for service.

American Home has failed to respond to claims made by policyholders and have improperly denied coverage for the losses. American Home was and continues to be obligated by the terms and conditions of its home warranty contracts to cover repairs or replacement when claimed by homeowner policyholders.

Thus, the Plaintiffs and class members are entitled to a declaratory judgment that the claims made under the home warranty policies are in whole properly covered and payment is owed under the policies issued to recipients. Further, the Plaintiffs and class members are entitled to injunctive relief forbidding American Home from failing to honor the coverage provided by the home warranty policies issued to policyholders.

American Home instituted policies, customs, practices, and procedures encouraging and directing their contractors to follow specific guidelines in a calculated effort to deny claims from policyholders whereby the contractors would receive a considerable bonus for the denial; all in violation of the policyholders' reasonable contractually based expectations under their home warranty policies, established law and public policy.

**INJUNCTIVE RELIEF**

VIII.

The Plaintiffs and class members repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

Based on the stated actions and motives of American Home in this petition, American Home should be enjoined from continuing the conduct and practices noted above, as well as enjoined from using the settlement and/or orders by the *Faught* Court as a defense or bar to this class action.

As such, the Plaintiffs and class members respectfully request that this Court enter a declaratory judgment and grant injunctive relief in its favor and against the Defendant, American Home.

**BREACH OF CONTRACT**

IX.

The Plaintiffs and class members repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

Valid contracts exist between the policyholders and American Home, which *inter alia*, obligate American Home to cover claims regarding repair or replacement issues with components/appliances of the home, which include HVAC systems.

Upon information and belief, all policyholders paid all premiums due under their policies and materially performed their obligations under those policies. Proper and repeated demands were made by receipts to American Home, which refused to meet their obligations under the policy contracts it drafted and refused to cover fully all claims from policyholders.

As a direct and proximate result of the breaches by American Home, the policyholders were deprived of the benefit of insurance coverage for which the Defendant was paid substantial premiums. American Home breached its contractual obligations to Plaintiff and class members resulting in damages of unpaid claims, inconvenience, pain and suffering, and mental and emotional distress.

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

X.

The Plaintiffs and class members repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

American Home lacks a reasonable or legitimate basis for refusing to cover the policyholder's claims, under established law and public policy. Defendant misrepresented the coverage afforded under the home warranty policy by wrongfully denying claims for repair or replacement, in a calculated effort to deprive policyholders of benefits which they

As a direct and proximate result of American Home's bad faith acts, the policyholders have suffered, and will continue to suffer, substantial damages, thereby further justifying the need for final injunctive relief for the class as a whole. Additionally, American Home's persistent and continuous acts and omissions were carried out with

malice and gross negligence and with a disregard for the policyholder's rights so as to warrant the imposition of penalties against American Home. American Home's bad faith led to Plaintiff and class members suffering damages of unpaid claims, inconvenience, pain and suffering, and mental and emotional distress.

**FRAUDULENT MISPRESENTATIONS**

XI.

The Plaintiffs and class members repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

American Home's fraudulent misrepresentations to Plaintiff and class members as appearing in the pleadings, notices and filings in the *Faught* class action lawsuit and subsequent settlements, resulted in damages of unpaid claims, inconvenience, pain and suffering, and mental and emotional distress.

**PENALTIES, ATTORNEY FEES AND COSTS**

XII.

The Plaintiffs and class members repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

**CONSEQUENTIAL DAMAGES & ATTORNEYS FEES FOR BAD FAITH BREACH OF CONTRACT**

XIII.

The Plaintiffs and class members repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

American Home's fraudulent nationwide conduct resulted in consequential damages to Plaintiff and class members, thus Plaintiff and class members are entitled to damages and attorneys fees for American Home's bad faith breach of contract.

**MENTAL ANGUISH**

XIIII.

The Plaintiffs and class members repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

American Home's fraudulent nationwide conduct resulted in pain and suffering, mental anguish, and emotional distress to Plaintiff and class members.

**TRIAL BY JURY**

XV.

The Plaintiffs and class members request a trial by jury for all issues plead herein so triable.

**PRAYER**

XVI.

**WHEREFORE**, Plaintiffs, William and Brigette Gaudet, respectfully requests individually and on behalf of all other similarly situated, that this Honorable Court enter judgment in their favor and against Defendant, American Home Shield Corporation as follows:

1) After a hearing, that an order be entered herein certifying this action and maintaining this action as a class action because of the established prerequisites of numerosity, commonality, typicality, adequacy, identifiability, and superiority;
2) For declaratory relief to be granted declaring that American Home's nationwide practice as alleged herein, equates to a breach of contract and bad faith with respect to the Plaintiff and class members;
3) For declaratory judgment to be granted, based on the stated actions and motives of American Home in this petition;
4) Plaintiff and class members are entitled to injunctive relief forbidding American Home from failing to honor the coverage provided by its policies issued to policyholders;
5) For an injunctive order directing American Home to pay all coverage afforded under the terms and conditions of the policyholder's policy, with full re-imbursement or repayment of any funds to which policyholders are entitled or losses and damages class members have or will incur;
6) Plaintiff and class members are entitled to all damages discussed herein, including, but not limited to, all general, specific, equitable and punitive relief, together with all interest, attorneys' fees, penalties and costs as Plaintiff and class members may be entitled under the law.

Respectfully Submitted,

MICHAEL D. RILEY (La. Bar No. 17116)
833 BARONNE STREET
NEW ORLEANS, LOUISIANA 70113
TELEPHONE: (504) 588-1110
FACSIMILE: (504) 588-1954

**Attorney for Plaintiff**

**PLEASE SERVE:**

**American Home Shield Corporation**
**Through CT Corporation Systems**
**5615 Corporate Blvd., Suite 400B**
**Baton Rouge, LA. , 70808.**

# EXHIBIT 1

FILED
2010 Mar-09 PM 05:4
U.S. DISTRICT COUR
N.D. OF ALABAM

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LAURA FAUGHT and STEVEN FAUGHT, on behalf of themselves and all others similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **Case No.: 2:07-CV-1928-RDP** |
| **AMERICAN HOME SHIELD CORPORATION,** | ) | |
| **Defendant.** | ) | |

**STATUS REPORT REGARDING BUSINESS PRACTICE CHANGES**

Pursuant to Paragraph 5.3A of the Stipulation of Settlement (the "Settlement") herein, plaintiffs Laura and Steven Faught ("the Faughts") and defendant American Home Shield Corporation ("AHS") hereby advise the Court that they have consulted, by and through counsel and with the assistance of Court-appointed mediator George M. Van Tassel, Jr., concerning AHS's communications, business practices, training materials and other AHS business concerns. The following summarizes the parties' discussions and agreements to date concerning these issues:[1]

[1] Capitalized terms, unless otherwise defined, have the meaning ascribed to them in the Settlement. Any agreement made by AHS as reflected in this Status Report

1. AHS agrees to use commercially reasonable efforts to, within 12 months after the Effective Date, instruct and train its employees involved in handling requests for service, and to communicate to its contractor network, that AHS shall not refuse to authorize a repair or replacement service under a Home Service Contract when, to the best of AHS's actual knowledge and information, there is no causal connection between the malfunction of a structural component, appliance or home system not being repaired or replaced and the reason provided by AHS to the customer for refusing to provide such repair or replacement.
2. AHS agrees to use commercially reasonable efforts to ensure that, within 12 months after the Effective Date, its written marketing materials shall, whenever statistical information is utilized therein: (i) identify the source of such statistical information; and (ii) disclose whether such statistical information is based on national or on local data.
3. AHS agrees that it shall continue its policy that compensation for any contractor within its contractor network shall not be calculated based on the contractor's actual or relative percentage or number of denied claims for repair or replacement service.

---

shall be subject to the notice and opportunity to cure provisions of Paragraph 11.1 of the Settlement.

4. AHS agrees to use commercially reasonable efforts to, within 24 months after the Effective Date, institute a process whereby AHS sends to each customer, as to whom a claim has been denied (in whole or in part), a reason or reasons in writing (whether by letter or email) for the denial.
5. AHS agrees to use commercially reasonable efforts to, within 24 months after the Effective Date, institute a process whereby, for any claim reasonably estimated by AHS at $1,000 or greater as to which AHS authorizes a denial based on an exclusion or exception from coverage under a Home Service Contract, AHS will require (to the extent reasonably practicable) a photograph of the affected system, appliance or component, which photograph will be collected and maintained in the request for service ("claim") file, or otherwise maintained in accordance with AHS's standard business practices.
6. AHS agrees to use commercially reasonable efforts to, within 24 months after the Effective Date, institute a process whereby, for a claim in which a denial is recommended by an authorization representative based on (i) the affected system, component or appliance being not within applicable legal or regulatory code, (ii) lack of capacity in existing system or appliance, or (iii) improper mismatching in terms of capacity or efficiency, such claim will be reviewed by a claims reviewer with

particular technical expertise or experience as to the subject matter of such claim.

7. AHS agrees to use commercially reasonable efforts to, within 24 months after the Effective Date, amend or modify its Home Service Contracts (where to do so would not conflict with any applicable legal or regulatory requirements or approvals) to permit each customer to cancel the same at any time upon oral or written request to AHS, with such cancellation to be effective as of 12:01 a.m. the following business day. Each customer who so cancels his or her Home Service Contract shall receive a pro rata refund for the remaining portion of the Contract period, less (i) any applicable administrative fee representing AHS's costs associated with the Contract cancellation, not to exceed the cost (calculated pro rata, if applicable) of one month's coverage under the Contract, and (ii) amounts theretofore incurred or paid by AHS under the Contract. Each customer shall further be allowed to cancel his or her Home Service Contract within the first thirty (30) days after it becomes effective, without any administrative fee, so long as no claim has been made under the said Contract. AHS further agrees to use commercially reasonable efforts to, within 24 months after the Effective Date, revise its written marketing materials (where applicable) and its Home Service Contracts (in each

case where not in conflict with applicable legal or regulatory requirements and approvals) to disclose and clarify the terms contained within this paragraph. Notwithstanding the foregoing, AHS shall in any event retain the right to collect any amounts owing from the customer that have accrued as of the time of the cancellation.

8. AHS agrees to use commercially reasonable efforts to, within 24 months after the Effective Date, disclose prominently in its Home Service Contracts (where not in conflict with any applicable legal or regulatory requirements or approvals) (a) any and all exclusions or exceptions from coverage under the terms of the Contract; and (b) that a service call fee will be charged to a customer even if AHS determines that a repair or replacement should or will be denied under the terms of the Contract.

9. AHS agrees to provide the Court and Named Plaintiffs' Counsel with annual status reports (which AHS may file under seal with the Court) addressing its progress toward making the business practice changes referenced herein. AHS's obligation to provide such reports shall commence twelve (12) months after the Effective Date, and conclude twenty-four (24) months after the Effective Date. AHS's obligation to continue any of the business practice changes referenced herein shall conclude twenty-four (24) months after the Effective Date. AHS

reserves the right to adopt substantially similar alternate business practice changes or policies to those listed above where it reasonably determines the above changes to be commercially impracticable or contrary to applicable law or regulation.

10. AHS confirms that, for a period of two years following the Effective Date, it intends to continue to solicit and consider, in keeping with Paragraph 5.3A of the Settlement, suggestions and comments from Named Plaintiffs' Counsel concerning communications, business practices, training materials or other business concerns, in connection with AHS's ongoing efforts to improve its business practices.

/s/ John E. Goodman
One of the Attorneys for Defendant
American Home Shield Corporation

OF COUNSEL:

BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

/s/ John E. Norris
One of the Attorneys for Plaintiffs

OF COUNSEL:

DAVIS & NORRIS, LLP
2154 Highland Avenue
Birmingham, AL 35205
Telephone: (205) 930-9900
Facsimile: (205) 930-9989

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Lea Bone, Esq.
Bates & Bone LLP
2154 Highland Avenue
Birmingham, AL 35205
lbone@batesbone.com
*Attorney for Plaintiffs: Laura Faught and Steven Faught*

Kirkland E. Reid, Esq.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
Post Office Box 46
Mobile, Alabama 36601
kreid@joneswalker.com
*Attorney for L.B. Chip Edleson and Karon Edleson*

John W. Davis
Law Office of John W. Davis
501 W. Broadway, Suite 800
San Diego, CA 92101
john@johnwdavis.com
*Attorney for Intervenors: John Chapon and Miriam Chapon*

R. Stephen Griffis
R. Stephen Griffis PC
2100 Riverhaven Drive, Suite 1
Hoover, AL 35244-2532
rsglaw@bellsouth.net
*Attorney for Intervenors: John Chapon and Miriam Chapon*

Charles M. Thompson
Charles M. Thompson PC
5615 Canongate Lane
Birmingham, AL 35242
mchapmanlaw@bellsouth.net
*Attorney for Intervenor: Charles M. Thompson*

Kearney D. Hutsler
Hutsler Law Firm
2700 Highway 280, Suite 320W
Birmingham, AL 35223
kdhlaw@hutslerlawfirm.com
*Attorney for Objectors: Connie Pentz, John Pentz, Sharon Lee, Thomas Arrington and Todd Pettitt*

and I hereby certify that I have served by facsimile and U.S. Mail the document to the following non-CM/ECF participants:

Francis A. Bottini, Jr., Esq.
Brett M. Weaver, Esq.
JOHNSON BOTTINI, LLP
501 W. Broadway, Suite 1720
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 238-0622
*Attorneys for Karon Edleson and L.B. Chip Edleson; Objectors: Vivian F. Johnson, Janet Tzendzalian, Rosalyn Urbanek, Merlyn D. Ling, Donald P. Leach, Robert W. Shepard, and Luz A. Shepard*

David J. Worley, Esq.
Page Perry LLC
1040 Crown Pointe Parkway
Suite 1050
Atlanta, Georgia 30338
Telephone: (770) 673-0047
Facsimile: (770) 673-0120
*Attorney for Karon and L.B. Chip Edleson*

Edward D. Chapman, Esq.
CHAPIN WHEELER LLP
550 West "C" Street, Suite 2000
San Diego, California 92101
Telephone: (619) 241-4810
Facsimile: (619) 955-5318
*Attorney for Karon and L.B. Chip Edleson*

Frank H. Tomlinson, Esq.
15 North 21st Street, Suite 302
Birmingham, AL 35203
Telephone: (205) 326-6626
Facsimile: (205) 328-2889
*Attorney for Objectors: John Howe, Jenny Hill, Jennifer Deachin, Michael McKerley, Kenneth R. Behrend, Pamela Behrend, Jeff Williams, Sabrina Williams f/k/a Sabrina Habib, and Janet K. Wood*

Pat Tulinski
Assistant Attorney General
Consumer Protection and Public Health Division
300 W. 15th Street, 9th Floor, MC 010
Austin, Texas 78701
Telephone: (512) 463-2185
Facsimile: (512) 473-8301
*Attorney General of Texas*

/s/ John E. Goodman
John E. Goodman

# EXHIBIT 2

AMERICAN HOME SHIELD®

Need Service?
Call Toll-free:
**1-800-776-4663**

Wiilliam & Bridgette Gaudet
38 Lakewood Pl.
New Orleans, LA 70131-8359

Dear Wiilliam & Bridgette Gaudet,

Welcome to American Home Shield®! We are pleased to offer coverage for one of your most valuable assets: your home. We strive to make your life easier and we are here for you 24/7 to take your request for service.

Please take a moment to read through this booklet. We have included a variety of information that will help you get the most out of your home warranty and make caring for your home simple and hassle free.

Please remove the wallet cards from below. These cards contain your unique contract number and simple steps on how to request service.

Inside, you will find your contract and selected coverage. Please contact us if you would like to add any of the additional coverage listed on the Contract Agreement page.

Please contact us if you have any questions or need clarification on your warranty coverage. We look forward to providing you the quality of service our customers have come to expect from us for over 35 years.

Sincerely,

Steve Burnett

Steve Burnett
Chief Marketing Officer

**Property At:** 38 Lakewood PL
New Orleans, LA 70131

**Contract #:** 17004364
**Effective Date:** 08/16/2007
**Expiration Date:** 08/16/2008 12:01 AM
**For service, please call** 1-800-776-4663.

AMERICAN HOME SHIELD®

, your rental home, or even a family member's
ond home warranty, and anyone can benefit.
nts who like to request service in the middle

# Keep Us Informed, So We Can Keep You Informed

## Please update or confirm any changes to your contact information with AHS®.

**To update your information you can:**

- Call 1-800-393-4072 (M-F 7am-9pm CST or S-S 7am-7pm CST)
- Email: contactinfo@ahslink.com
- Mail:

  American Home Shield
  c/o Sales Department
  PO Box 849
  Carroll, IA 51401-9901



**Be sure to include:**

- Contract ID
- Your Name
- Mailing Address
- Phone Number
- Email Address

**Why is my email address important?**
Email – AHS confirms all work orders via email. The email will include the contact information of your assigned service contractor.

[redacted]

### Receive service in 3 simple steps:

1. Make a service request.
   Visit www.ahsservice.com or
   Call the number on the front of this card.
   **AHS® is available 24/7 for service requests.**
2. An AHS service contractor will contact you during normal business hours to set up an appointment.
3. A trade service call fee will be due when the technician arrives.

# 3 Ways AHS® Takes Out the Hassle...



### If AHS determines it can't be fixed, we will replace it.

After an AHS service contractor determines your covered system or appliance can't be repaired, AHS will replace it. You simply pay the trade service call fee and let AHS worry about the heavy lifting.

### Don't take the heat for repeat visits.

You only have to pay your trade service call fee once for each covered breakdown within a 30 day period. There will be no additional trade service call fee if the technician comes today and has to come back next week with new parts.

### No limit to the number of covered repairs.

If your dishwasher breaks this month and next month your stove is on the blink – just call AHS. The rest will be taken care of with no hassles. It's that simple.

# Vacation or Rental Property?

### Coverage is available for additional homes

Call AHS to start protecting your vacation home, your rental home, or even a family member's home! Virtually any property is eligible for a second home warranty, and anyone can benefit. This is especially convenient for those with tenants who like to request service in the middle of the night.

# Contract Agreement

OWNER:

Wiilliam & Bridgette Gaudet
38 Lakewood Pl.
New Orleans, LA 70131-8359

| | |
|---|---|
| ANNUAL RATE: | $ 434.00 |
| CONTRACT TERM: | 08/16/2007 - 08/16/2008 12:01 AM |
| CONTRACT NUMBER: | 17004364 |
| COVERED PROPERTY: | 38 Lakewood Pl.<br>New Orleans, LA 70131 |
| DWELLING TYPE: | Single Family Residence under 5,000 sq.ft. |
| PAYMENT SELECTED: | 1 Payment |

**Your service fee will be $55.00**

**Request service 24 hours a day, 7 days a week:**

**www.ahsservice.com** **1-800-776-4663**

# Contract Agreement

## All items checked below are included in your home warranty:

- ☑ AIR CONDITIONING
- ☑ CENTRAL VACUUM SYSTEM
- ☑ HEATING SYSTEM
- ☑ REMOVAL OF DEFECTIVE EQUIPMENT
- ☑ ELECTRICAL SYSTEM
- ☑ GARAGE DOOR OPENER
- ☑ PLUMBING
- ☑ REFRIGERATOR
- ☑ COOKTOP
- ☑ CLOTHES WASHER
- ☑ WATER HEATER
- ☐ POOL/SPA COMMON EQUIPMENT
- ☐ POOL ONLY
- ☐ WELL PUMP
- ☑ STEAM/WATER HEAT
- ☑ CEILING FANS
- ☑ DISHWASHER
- ☑ DUCTWORK
- ☑ GARBAGE DISPOSAL
- ☑ BUILT-IN MICROWAVE
- ☑ PERMIT FEES COVERED UP TO $250
- ☑ RANGE/OVEN
- ☑ TRASH COMPACTOR
- ☑ CLOTHES DRYER
- ☑ WATER SOFTENER
- ☐ WHIRLPOOL
- ☐ SPA ONLY

**It's not too late! Items not selected above can still be added to your plan.**

**Contact us to add additional coverage not selected above:**

**1-800-247-4749**

**American Home Shield Corporation**
**P.O. Box 849**
**Carroll, IA 51401**

A. COVERAGE
1. During the coverage period, AHS will arrange for an AHS authorized service contractor (Service Contractor) to repair or replace the systems and appliances stated as covered in accordance with the terms and conditions of this contract so long as the systems and appliances:

   **A. Are located within the confines of the main foundation of the home or attached or detached garage (with the exception of the exterior well pump, air conditioner, and pool and/or spa equipment, if selected);**
   **B. Become inoperative due to normal wear and tear;**
   **C. Are in good working order on the Effective Date of this contract (as defined below); and**
   **D. Are properly maintained and installed throughout the term of this contract for proper diagnosis.**

2. This contract only covers single family resale homes, new construction homes, and condominiums/townhomes/mobile homes (including manufactured housing) under 5,000 square feet, unless an alternative dwelling type (i.e. 5,000 square feet up to 10,000 square feet, or multiple units) is applied for by calling the Sales phone number on the Contract Agreement page, and the appropriate fee is paid. Coverage is for owned or rented residential property, not commercial property or residences used as businesses, including, but not limited to, day care centers, fraternity/sorority houses, and nursing/care homes.
3. This contract describes the basic coverage and options available for domestic grade appliances and systems. Domestic grade items are those that were manufactured and marketed solely for installation and use in a residential family dwelling. For the specific coverage selection on your home, see the Contract Agreement page. Coverage includes only the items stated as covered and excludes all others. Coverage is subject to limitations and conditions specified in this contract. **Please read your contract carefully.**

B. CONTRACT TERM
1. Seller's coverage for the listing and sale (escrow) period starts upon issuance of a contract number by AHS (Effective Date), and continues for 180 days or close of sale (escrow) or termination of listing (whichever occurs first). In the event that close of sale (escrow) does not occur in such 180-day period, AHS may, in its sole discretion, extend the seller's coverage period. If the application is received as a telephone or web application, then coverage will start immediately upon issuance of a contract number by AHS. Seller's coverage includes systems and appliances in Section D only, and excludes all others, unless the Heating, Air Conditioning, and Ductwork (HVAC) option is purchased.
2. Buyer's coverage begins at close of sale (escrow), provided plan fee is paid to AHS (Effective Date), and continues for one (1) year after close of sale (escrow). Any payments made by AHS during the optional seller's coverage period (if applicable) for the repair or replacement of any covered item shall apply against any "per contract" or "per covered item" dollar limitations set forth herein. Any exclusion, denial or suspension of service made by AHS during the optional seller's coverage period of any covered item shall apply against the buyer's coverage as set forth herein unless such item is repaired or replaced.
3. Contract term for new construction homes shall begin one (1) year after close of sale (escrow) and continues three (3) years from that date, provided plan fee is paid.
4. Lease option coverage (available for lessee only) begins upon receipt of application and contract fees by AHS and continues for one (1) full year.

C. CUSTOMER SERVICE – TO REQUEST SERVICE CALL: 1-800-776-4663 OR VISIT www.ahsservice.com
1. You must notify AHS for work to be performed under this contract as soon as the problem is discovered. AHS will accept service calls 24 hours a day, 7 days a week at 1-800-776-4663 or online at www.ahsservice.com. **Notice of any service request must be given to AHS prior to expiration of this contract.**
2. Upon request for service, AHS will contact a Service Contractor within four (4) hours during normal business hours and forty-eight (48) hours on weekends and holidays. The Service Contractor will promptly contact you to schedule a mutually convenient appointment during normal business hours. **AHS will determine what repairs constitute an emergency and will make reasonable efforts to expedite emergency service. If you should request AHS to perform non-emergency service outside of normal business hours, you will be responsible for payment of additional fees, including overtime.**
3. The contract provides for the payment of up to $75 per night, or up to 3 nights lodging in a motel or hotel, if delays are encountered in heating system repairs when the outside temperature is less than 40° F. or delays in A/C repairs when outside temperature is more than 95° F. The maximum amount this contract will pay for motel/hotel expenses during the term of this contract is $225.
4. **AHS has the right to select the Service Contractor, which may be a service company affiliated with AHS, to perform the service. AHS will not reimburse for services performed without its prior approval.**
5. You will pay $55 or $95 for each trade service call (**depending on which home warranty contract you selected to purchase on the AHS Application**), or the actual cost, whichever is less. Additional charges may apply to certain repairs and replacements. The trade service call fee is for each call dispatched and scheduled to be run (except as noted in Section C.6.) including, but not limited to, trade service calls wherein coverage is (in whole or in part) granted, excluded, limited or denied. Please note: the trade service call fee applies in the event you fail to be present at the scheduled time of the trade service call or in the event you cancel a call at the time the Service Contractor is in route to your home or the Service Contractor has already arrived at your home. The trade service call fee will be due and payable to the Service Contractor (or to AHS) at the time of the scheduled trade service call. AHS will not respond to any new requests for service until any previous outstanding trade service call fees are paid in full.
6. **At the time the work begins and at appropriate time(s) thereafter, certain repairs and replacements may require you to allow a state or local building inspector access to your home.** Failure to pay any required permit fee above $250 or to allow access to your home by the building inspector, will result in suspension of coverage (for that specific repair or replacement) until such time as the permit fee is paid or access is granted (as applicable). At that time, coverage will be reinstated; however, the contract term will not be extended.
7. If service work performed under this contract should fail, AHS will make the necessary repairs without an additional trade service call fee **for a period of 90 days on parts and 30 days on labor.**

D. COVERED SYSTEMS AND APPLIANCES
**The following systems and appliances are covered for the home seller and home buyer. Certain limitations of liability apply to covered systems and appliances (see Sections A and G).**
**1. PLUMBING SYSTEM**
COVERED: Leaks and breaks of water, drain, gas, waste or vent lines, except if caused by freezing or roots – Toilet tanks, bowls and related mechanisms (builder's standard is used when replacement is necessary), toilet wax ring seals – Valves for shower, tub, and diverter, angle stops, risers and gate valves – Permanently installed sump pumps (ground water only).
NOT COVERED: Collapse or damage to water, drain, gas, waste or vent lines caused by freezing or roots – Caulking and grouting – Septic tanks – Pressure regulators – Inadequate or excessive water pressure – Flow restrictions in fresh water lines caused by rust, corrosion or chemical deposits – Sewage ejector pumps – Holding or storage tanks – Saunas or steam rooms – Hose bibs – Whirlpool jets.
**NOTE: Where covered repairs require access to plumbing systems, AHS will only provide access to plumbing systems through unobstructed walls, ceilings or floors, and will return access openings to a rough finish. Obstructions include, without limitation, built-in appliances, systems, cabinets, and floor coverings. AHS will cover up to $500 for access, diagnosis, repair or replacement (including returning access openings to a rough finish) to any portion of a plumbing system that is inaccessible because of concrete. See Section B. for length of contract term.**

© 2005 AHS Corporation GEN105

2. STOPPAGES
COVERED: Clearing of mainline drain and sewer stoppages up to 100 feet from access point, except if caused by roots. Mainline stoppages are only cleared when an accessible cleanout is either available or can be installed (installation not covered). Clearing of lateral drain line stoppages up to 100 feet from access point including, but not limited to, accessible cleanout, p-trap, drain or overflow access points, and removing a toilet for a toilet stoppage only.
NOT COVERED: Costs to locate or access cleanouts not reasonably found or accessible, or to install cleanouts. Access through roof vents or toilets (except where noted). Stoppages caused by collapsed, damaged or broken drain, vent or sewer lines outside of the home's main foundation – Stoppages due to roots or foreign objects – Lines broken or infiltrated by roots, or otherwise stopped by roots, even if within the home's main foundation – Septic tanks.
3. PLUMBING FIXTURES
COVERED: Faucet assemblies, lavatories, bathtubs, toilets, and drain traps.
NOT COVERED: Shower enclosures and shower base pans – Leaks due to failure of caulk, putty or grout – Toilet lids and seats – Interior "whirlpool-jacuzzi" type tubs or equipment are excluded unless purchased under the Optional Coverage.
4. ELECTRICAL SYSTEM
COVERED: All components and parts, including built-in exhaust fans, except:
NOT COVERED: Fixtures – Door bells – Alarms – Intercom or speaker systems – Audio/video/computer wiring or cable – Telephone wiring – Inadequate wiring capacity – Power failure or surge – Direct current (D.C.) wiring or components and/or low voltage systems including wiring and relays – Circuit overload – Power vents – Bathroom heaters and fans.
5. WATER HEATER (Gas, Electric, or Oil)
COVERED: All components and parts, including circulating pumps, except:
NOT COVERED: Solar water heaters – Solar components – Ancillary holding or storage tanks – Noise – Fuel storage tank and energy conservation unit – Thermal expansion tanks – Instant hot water dispenser.
6. RANGE/OVEN/COOKTOP (Gas or Electric)
COVERED: All components and parts, except:
NOT COVERED: Clocks (unless they affect the function of the oven) - Meat probe assemblies - Rotisseries - Racks - Handles - Knobs - Sensi-heat burners will only be replaced with standard burners.
7. CLOTHES WASHER
COVERED: All components and parts, except:
NOT COVERED: Plastic mini-tubs - Soap dispensers - Filter screens - Knobs and dials - Damage to clothing – Drawers.
8. CLOTHES DRYER (Gas or Electric)
COVERED: All components and parts, except:
NOT COVERED: Venting - Lint screens - Knobs and dials – Dryer cabinet fragrance/humidity center, hangers, shelves, rods, hooks, and cabinet liner – Damage to clothing – Racks – Drawers.
9. GARBAGE DISPOSAL
COVERED: All components and parts, including entire unit.
10. GARAGE DOOR OPENER
COVERED: Wiring – Motor – Switches – Receiver unit – Rail/Trolley assembly.
NOT COVERED: Doors – Hinges – Springs – Remote transmitters – Track assembly.
11. WATER SOFTENER
COVERED: Domestic water softener.
NOT COVERED: Conditions of insufficient or excessive water pressure.
12. CEILING AND WHOLE-HOUSE ATTIC FANS
COVERED: All components and parts.
13. DISHWASHER
COVERED: All components and parts, except:
NOT COVERED: Racks - Baskets – Rollers.
14. BUILT-IN MICROWAVE OVEN
COVERED: All components and parts, except:
NOT COVERED: Interior linings - Door glass - Shelves - Portable or counter top units - Meat probe assemblies – Rotisseries – Clocks.
15. TRASH COMPACTOR
COVERED: All components and parts, except:
NOT COVERED: Lock and key assemblies - Removable buckets.
16. CENTRAL VACUUM SYSTEM
COVERED: All components and parts, except:
NOT COVERED: Removable hoses and accessories. AHS is not responsible for the cost of gaining access from the floor or walls either to locate the cause of malfunction or to affect repair or replacement.

**E. ADDITIONAL COVERAGE FOR THE HOME BUYER**
**OPTIONAL COVERAGE FOR THE HOME SELLER**
**NOTE FOR SELLER: Optional HVAC coverage fee of $70 is due at the closing, expiration of listing, or cancellation, whichever occurs first. The following items in Section E are subject to a combined $1,500 maximum coverage limitation during the listing period. Limitation of liability specified in Sections A and G shall apply.**
**1. HEATING SYSTEM OR BUILT-IN WALL UNIT (Gas, Electric, or Oil if main source of heat to the home – Space or area type heating units are covered only where there is no central heating system.)**
COVERED: Heating systems including: heat pump; metering devices (i.e. thermal expansion valves); furnace; furnace transition; evaporator coils and drain lines; air handling unit; air handling transition; secondary drain pan and lines; and refrigerant lines are covered. Any of the foregoing covered components as well as plenum, indoor electrical, and duct connections are also covered when AHS determines that upgrading a heating system is required to maintain compatibility with equipment manufactured to be 13 SEER (Seasonal Energy Efficiency Ratio) and 7.7 HSPF (Heating Seasonal Performance Factor) compliant, or compliant with higher SEER or HSPF requirements.
NOT COVERED: All components and parts relating to geothermal, water source heat pumps including: outside or underground piping, components for geothermal and/or water source heat pumps, redrilling of wells for geothermal and/or water source heat pumps, and well pump and well pump components for geothermal and/or water source heat pumps - Baseboard casings - Fuel storage tanks - Portable units - Solar heating systems - Fireplaces and key valves - Filters - Registers - Grills - Clocks - Timers - Heat lamps - Humidifiers - Flues and vents - Improperly sized heating systems – Chimneys – Pellet stoves – Cable heat (in ceiling) – Wood stoves (even if only source of heating) – Systems with improperly matched condensing unit and evaporative coil per manufacturer's specifications – Improper use of metering devices (i.e. thermal expansion valves).
**NOTE BUYER ONLY: AHS will pay no more than $1,000 per covered item per contract term for access, diagnosis and repair or replacement of any glycol, hot water or steam circulating heating system. See Section B. for length of contract term.**
2. AIR CONDITIONING/COOLER
**NOTE: Coverage available on heating and/or cooling systems not exceeding a five (5) ton capacity and designed for residential application.**
COVERED: Ducted electric wall air conditioning systems – Water evaporative cooler systems – Ducted electric central air conditioning systems including: condenser; metering devices (i.e. thermal expansion valves); furnace transition; evaporator coils and drain lines; air handling unit; air handling transition; secondary drain pan and lines; and refrigerant lines are covered. Any of the foregoing covered components as well as plenum, indoor electrical, and duct connections are also covered when AHS determines that upgrading a ducted electric central air conditioning system is required to maintain compatibility with equipment manufactured to be 13 SEER (Seasonal Energy Efficiency Ratio) and 7.7 HSPF (Heating Seasonal Performance Factor) compliant, or compliant with higher SEER or HSPF requirements.
NOT COVERED: Gas air conditioning systems - Condenser casings - Registers and grills - Filters - Electronic air cleaners - Window units - Non-ducted wall units – Any systems using R-500 freon – Water towers - Humidifiers - Roof jacks or stands - Evaporative cooler pads - Flues - Vents - Improperly sized air conditioning unit – Chillers and chiller components – Systems with improperly matched condensing unit and evaporative coil per manufacturer's specifications – Improper use of metering devices (i.e. thermal expansion valves).

© 2005 AHS Corporation GEN105

**3. DUCTWORK**
COVERED: Ducts from heating, cooling, and/or water heater units to point of attachment at registers or grills and flex ductwork.
NOT COVERED: Registers or grills - Insulation - Asbestos-insulated ductwork - Dampers - Improperly sized ductwork – Diagnostic testing of, or locating leaks to ductwork, including, without limitation, as required by any federal, state or local law, regulation, or ordinance, or when required due to the installation or replacement of system equipment.

**F. OPTIONAL COVERAGE FOR THE HOME BUYER (AVAILABLE UPON PAYMENT OF ADDITIONAL CONTRACT FEE.)**
**NOTE: Home buyer may purchase any optional coverage for up to 30 days after the Effective Date (see Section B). However, coverage shall not commence until receipt of payment by AHS and such coverage shall expire upon expiration of contract term in Section B. Limitations of liability specified in Sections A and G shall apply.**
**For new construction coverage, home buyer may purchase optional coverage up to 30 days after close of sale (escrow) provided such item was supplied by the home builder or developer (must be new). Optional coverage may be obtained after the initial 30 day period provided item is brand new and proof of brand new purchase is submitted to AHS. Contract term shall begin after the expiration of the manufacturer's warranty and will continue for the remainder of the contract. However, the coverage period shall begin 365 days from close of sale (escrow) and continues three (3) years from that date, provided contract fee is paid. Limitations of liability specified in Sections A and G shall apply.**
**1. POOL AND/OR SPA EQUIPMENT (excludes portable or above ground spas)**
COVERED: Both pool and built-in spa equipment (exterior hot tub and whirlpool) are covered if they utilize common equipment. If they do not utilize common equipment, then only one or the other is covered unless an additional fee is paid. Coverage applies to above ground, accessible, working components and parts of the heating, pumping, and filtration system as follows: Heater – Pump – Motor – Filter – Filter timer – Gaskets – Blower – Timer – Valves, limited to back flush, actuator, check, 2-way and 3-way valves – Relays and switches – Above ground plumbing pipes and wiring.
NOT COVERED: Pool sweep motor and pump – Lights - Liners - Structural defects - Solar equipment - Jets – Ornamental fountains, waterfalls and their pumping systems – Pool cover and related equipment – Fill line and fill valves - Built-in or detachable cleaning equipment such as, but not limited to, pool sweeps, pop-up heads, turbo valves, skimmers, chlorinators, and ionizers - Fuel storage tanks – Disposable filtration mediums – Heat pump – Portable or above ground spas – Multi-media centers.
**2. ONE KITCHEN REFRIGERATOR (must be located in the Kitchen)**
COVERED: All components and parts, except:
NOT COVERED: Racks - Shelves – Drawers – Ice makers, ice crushers, beverage/water dispensers and their respective equipment - Interior thermal shells - Food spoilage - Freezers which are not an integral part of the refrigerator – Multi-media center.
**3. WHIRLPOOL BATHTUBS**
COVERED: Interior "whirlpool-jacuzzi" type systems (circulation system, piping, pump/motor, inlets or outlets, electrical controls and wiring).
NOT COVERED: Opening or closing access route.
**4. WELL PUMP**
COVERED: All components and parts of well pump utilized as the main source of water to the home, except:
NOT COVERED: Above or underground piping, cable or electrical lines leading to or from the well pump, including those that are located within the well casing – Well casings – Pressure switches not located on the pump – Holding, storage or pressure tanks – Booster pumps – Redrilling of wells – Well pump and well pump components for geothermal and/or water source heat pumps – Above or underground piping, cable or electrical lines for geothermal and/or water source heat pumps, including those that are located within the well casing.

**G. LIMITATIONS OF LIABILITY**
1. The following are not covered for the home seller or for the first 30 days after the Effective Date (see Section B) for the home buyer: (a) malfunction or improper operation due to rust or corrosion of appliances, heating systems (including built-in wall units or heat pumps) and/or air conditioning systems/coolers or pools/spas; (b) collapsed ductwork.
2. AHS is not responsible for providing or closing access to covered items except as noted in Section D.1.
3. AHS is not liable for restoration of any wall coverings, floor coverings, cabinets, counter tops, tiling, paint, or the like, nor the repair of any cosmetic defects.
4. AHS is not responsible for electronic or computerized home management systems including, but not limited to, energy, lighting, security, appliances, entertainment, comfort or audio systems.
5. AHS is not responsible or liable for secondary, incidental and/or consequential loss or damage resulting from the malfunction of any covered item including, but not limited to, food spoilage, loss of income, utility bills, additional living expenses, personal and/or property damage, or authorized contractor's service or delay in service.
6. AHS is not responsible or liable for any delay in service or failure to provide service caused by conditions beyond its control, including, but not limited to, delays in obtaining, or shortages of, parts and/or equipment, or labor difficulties.
7. AHS is not responsible or liable for repair of conditions or replacement caused by chemical or sedimentary build up, misuse or abuse, failure to clean or maintain, missing parts, structural changes, fire, freezing, electrical failure or surge, water damage, lightning, mud, earthquake, soil movement, storms, accidents, pet damage, pest damage, acts of God, or failure due to excessive or inadequate water pressure.
8. AHS has the sole right to determine whether a covered system or appliance will be repaired or replaced. Should AHS replace a covered appliance, system or component, AHS will pay the costs related to the disposal of the old appliance, system or component. AHS is responsible for installing replacement equipment of similar features, capacity, and efficiency, but not for matching dimensions, brand or color. Except when repairing or upgrading covered systems to maintain compatibility with equipment manufactured to be 13 SEER or 7.7 HSPF compliant, or compliant with any higher SEER or HSPF requirements, AHS is not responsible or liable for upgrades, components, parts or equipment required due to: (a) the incompatibility of the existing equipment with the replacement system or appliance or component or any part thereof; or (b) any new type of chemical or material utilized to run the replacement equipment including, but not limited to, differences in technology, refrigerant requirements, or efficiency as mandated by federal, state, or local governments. AHS is not responsible or liable for the cost of construction, carpentry, or other modifications made necessary by the existing equipment or installing different equipment.
9. AHS is not responsible or liable for repairs related to inadequacy, lack of capacity, misuse, improper installation, previous repair or design, manufacturer's defect, and any modification to the system or appliance. AHS does not perform routine maintenance. You are responsible for providing maintenance and cleaning on covered items as specified by the manufacturer to ensure continued coverage on such items. For example: heating and air conditioning systems require periodic cleaning and/or replacement of filters and cleaning of evaporator and condenser coils. Water heaters require periodic flushing.
10. AHS reserves the right to obtain a second opinion at its expense.
11. This contract does not cover appliances or systems deemed or classified by the manufacturer as commercial.
12. AHS is not responsible for any repair, replacement, installation, or modification of any covered system, appliance, or component or part thereof: (a) that has been, or is, determined to be defective by the Consumer Product Safety Commission or the manufacturer; (b) that a manufacturer has issued, or issues, a warning or recall; (c) that has a malfunction caused by the manufacturer's improper design, use of improper materials, formula, manufacturing process or other manufacturing defect; or (d) while still under an existing manufacturer's, distributor's, or in-home warranty.
13. AHS reserves the right to provide pre-approved reimbursement of itemized costs or cash back in lieu of repair or replacement. Both pre-

© 2005 AHS Corporation GEN105

approved reimbursement of itemized costs and cash back in lieu of repair or replacement will be based on what AHS would ordinarily expect to pay for the same parts and labor, which may be less than retail or your actual cost. Acceptable proof of your actual itemized costs must be provided to AHS before any reimbursement amount may be paid.
14. AHS reserves the right to rebuild a part or component, or replace with a rebuilt part or component.
15. AHS is not under any circumstances liable for the diagnosis, repair, removal or remediation of mold, mildew, bio-organic growth, rot or fungus, or any damages resulting from or related to mold, mildew, rot or fungus, even when caused by or related to the malfunction, repair or replacement of a covered system or appliance.
16. AHS will not contract to perform service nor pay costs involving hazardous or toxic materials including, but not limited to, asbestos, mold, lead paint, and sanitation of sewage spills, nor will it pay costs related to recapture or disposal of refrigerants, contaminants, hazardous, or toxic materials.
17. This contract does not cover fees associated with use of cranes needed to install or remove any equipment located on the roof top.
18. AHS is not responsible for like-for-like replacement of appliances if the appliance contains any features that do not contribute to the appliance's primary function including, without limitation, TVs or radios in refrigerators.

H. LAWS, REGULATIONS AND CODE REQUIREMENTS
Except when repairing or upgrading covered systems to maintain compatibility with equipment manufactured to be 13 SEER or 7.7 HSPF compliant, or compliant with any higher SEER or HSPF requirements, AHS is not responsible for any upgrades, work, testing or costs required to comply with any federal, state, or local laws, regulations or ordinances or utility regulations, or to meet current building or zoning code requirements, or to correct for code violations. AHS will pay for the cost of local building permits for approved repairs and replacements up to $250 per occurrence but will not be responsible for service when permits cannot be obtained. AHS' policy is to abide by all current federal, state, and local laws, regulations and guidelines. AHS will not be responsible for any liability arising from repairs or replacements that violate any such laws, regulations, or guidelines.

I. MULTIPLE UNITS AND INVESTMENT PROPERTY
1. If this contract is for a duplex, triplex, or fourplex dwelling, then all unit(s) within such dwelling must be covered by one AHS contract for protection to apply to common systems. Should any unit within such dwelling not be covered as part of the one AHS contract, then AHS is not liable for common systems or appliances.
2. If this contract is for a dwelling within a multiple unit of five (5) dwelling units or more, then only items contained within the confines of each individual unit are covered. Common systems and appliances are not covered.
3. Except as otherwise provided in this section, common systems and appliances are not covered.

J. TRANSFER OF CONTRACT AND RENEWALS
1. If the covered property changes ownership during the contract term, please call the Sales phone number on the Contract Agreement page for further information to transfer coverage to the new owner.
2. This contract may be renewed at the option of AHS. In that event, you will be notified of the prevailing rates and terms for renewal.

K. CANCELLATION
A. This contract may be cancelled by the contract holder within the first 30 days following the Effective Date, unless otherwise mutually agreed upon by AHS and contract holder. In such cases, this contract shall be deemed void and the provider of funds shall be entitled to a full refund of the paid contract fees less any service (and claims) costs incurred by AHS.
B. This contract shall be non-cancelable by AHS, except: (1) for nonpayment of contract fees; (2) for fraud or misrepresentation of facts material to the issuance of this contract; (3) when the contract is for listing coverage and close of sale (escrow) does not occur, if applicable; or (4) upon mutual agreement of AHS and the contract holder. If AHS cancels or agrees to allow the contract holder to cancel after the 30th day, then the provider of funds shall be entitled to a pro rata refund of the paid contract fees for the unexpired term, less: (a) an administrative fee of up to $35; and (b) any service (and claims) costs incurred by AHS (collectively, the "Cancellation Fees"). A 10% monthly penalty shall be added to refunds not paid or credited within 45 days after the return of this contract to AHS.
C. If the contract fees are billed through a mortgage loan that is later sold or paid in full, then uninterrupted coverage can be arranged by immediately calling (800) 247-4749 to establish an alternate payment method. This contract will be deemed cancelled if the contract holder fails to initiate such payment arrangements within 30 days (or such other time period for notice to the contract holder as set forth below).
**The law in the contract holder's state (i.e. where residence is located) may revise this cancellation section. Therefore, the following provisions expressly modify the specific cancellation language set forth above:**
**ALABAMA residents only:**
A. This contract may be cancelled by the contract holder within the first 30 days following the Effective Date, unless otherwise mutually agreed upon by AHS and contract holder. In such cases, this contract shall be deemed void and the provider of funds shall be entitled to a full refund of the paid contract fees less any service (and claims) costs incurred by AHS.
B. This contract shall be non-cancelable by AHS, except: (1) for nonpayment of contract fees; (2) for fraud or misrepresentation of facts material to the issuance of this contract; (3) when the contract is for listing coverage and close of sale (escrow) does not occur, if applicable; or (4) upon mutual agreement of AHS and the contract holder. If AHS cancels or agrees to allow the contract holder to cancel after the 30th day, then the provider of funds shall be entitled to a pro rata refund of the paid contract fees for the unexpired term, less: (a) an administrative fee of up to $35; and (b) any service (and claims) costs incurred by AHS (collectively, the "Cancellation Fees"). A 10% monthly penalty shall be added to refunds not paid or credited within 45 days after the return of this contract to AHS. At least 5 days prior written notice is required for any cancellation by AHS, except for: (1) nonpayment of contract fees; or (2) fraud or misrepresentation of facts material to the issuance of this contract.
C. If the contract fees are billed through a mortgage loan that is later sold or paid in full, then uninterrupted coverage can be arranged by immediately calling (800) 247-4749 to establish an alternate payment method. This contract will be deemed cancelled if the contract holder fails to initiate such payment arrangements within 30 days.
**ILLINOIS residents only:**
This contract is issued and serviced by American Home Shield Corporation. **THIS IS NOT A CONTRACT OF INSURANCE. This contract may only cancelled pursuant to the terms as provided herein. If cancelled, AHS shall have no further obligation, except as specified under Items 1 and 2 as follows: (1) this contract may be cancelled by the contract holder during the first 30 days of coverage for a full refund of the paid contract fees, if an only if, no service has been provided under this contract. If so cancelled after 30 days by the contract holder, contract holder shall be entitled to a pro rata refund of the paid contract fees for the unexpired term, less a cancellation fee (incurred by AHS) of $30 or 10% of the contract price, whichever is less. (2) This contract may be cancelled by AHS or contract holder at any other time, and contract holder shall be entitled to a pro rata refund of the paid contract fees for the unexpired term, less the value of any services received and less a cancellation fee (incurred by AHS) of $30 or 10% of the contract price, whichever is less. If the contract fees are billed through a mortgage loan that is later sold or paid in full, then uninterrupted coverage can be arranged by immediately calling (800) 247-4749 to establish an alternate payment method. This contract will be deemed cancelled if the contract holder fails to initiate such payment arrangements within 30 days.**

L. MISCELLANEOUS
**ALABAMA residents only:**
Obligations of the provider under this service contract are backed by the full faith and credit of the provider.
**ILLINOIS residents only:**
Obligor is American Home Shield Corporation.

© 2005 AHS Corporation GEN105

# Common AHS® Home Warranty Questions

**Q. My system or appliance is over 10 years old. Is it still covered?**

A. Yes. Your AHS Home Warranty covers your home systems and appliances no matter what age.

**Q. How many service calls am I allowed?**

A. As many as you need. There is no limit to the number of times you can call for covered repairs. In fact, the typical AHS Home Warranty owner calls for repairs more than two times a year.

**Q. What if I have an appliance that can't be fixed?**

A. If we determine your covered system or appliance can't be fixed by a service contractor, it will be replaced based on your contract agreement.

**Q. Do service contractors vary charges based on the type or complexity of the repair?**

A. No, you pay the same low trade service call fee.

**Q. How do I know my service contractor is qualified?**

A. AHS contractors are pre-screened to meet our quality standards. Performance is also monitored regularly to make sure you receive professional, quality work. Your satisfaction is a top priority at AHS.

**Q. What if I'm not satisfied with the services?**

A. AHS will work with you until you are satisfied or we will refund the amount of the trade service call fee.

**Q. Can I access my account online?**

A. Yes. Simply go online to www.ahsservice.com, and you can request repair services, make payments, view your account status and more.

# Quick Fixes for Common Problems

Below are a few quick and easy ways to fix problems with your household items. With any system failure, always check the fuse box/circuit breaker first.

**Air Conditioning Unit**

Problem: Unit cycles on and off constantly

Solution: Have a professional clean out the evaporator unit.

**Water Heater**

Problem: No hot water

Solution: Re-light pilot light, and make sure gas controls are on. If your heater is electric and you've already checked the fuse box, push the reset button.

Problem: There isn't enough hot water

Solution: Turn the thermostat higher, insulate the hot water pipes. Call a professional if that doesn't fix the problem.

**Refrigerator & Freezer**

Problem: It has stopped running however the light works and you hear a clicking noise.

Solution: Clean the coils with a vacuum only. Check the fan. Test the thermostat and replace if necessary.

**Furnace**

Problem: No heat at all.

Solution: After checking the fuse box, check blower motor. Make sure gas is on/pilot is lit.

Problem: Rooms aren't warm enough.

Solution: Replace the filter, have a professional clean the ducts, or call a professional to inspect it.

**Oven/Range**

Problem: Burner isn't working.

Solution: If it is a gas range, re-light the pilot and make sure the gas is on. If it is electric there could be a defective element, wiring, or switch. Check each part for continuity.

**Electric Clothes Dryer**

Problem: Drum turns, but nothing is drying.

Solution: Clean the trap and the exhaust vent. Check the thermostat, element, and timer. One of them may need to be replaced.

These "tips" are offered as suggestions for troubleshooting some of the more common causes of the mechanical failure of home systems and appliances. If you do not feel comfortable you have the requisite knowledge, skill or experience to safely and properly implement any of the suggested "tips" that may apply to your systems or appliances, DO NOT ATTEMPT TO FOLLOW THE "TIPS". CALL A QUALIFIED PROFESSIONAL. AHS disclaims any and all responsibility and liability for any injuries, damages or liabilities that may arise out of any application or implementation, or reliance upon, these "tips".

# Common AHS® Home Warranty Questions

**Q. My system or appliance is over 10 years old. Is it still covered?**

A. Yes. Your AHS Home Warranty covers your home systems and appliances no matter what age.

**Q. How many service calls am I allowed?**

A. As many as you need. There is no limit to the number of times you can call for covered repairs. In fact, the typical AHS Home Warranty owner calls for repairs more than two times a year.

**Q. What if I have an appliance that can't be fixed?**

A. If we determine your covered system or appliance can't be fixed by a service contractor, it will be replaced based on your contract agreement.

**Q. Do service contractors vary charges based on the type or complexity of the repair?**

A. No, you pay the same low trade service call fee.

**Q. How do I know my service contractor is qualified?**

A. AHS contractors are pre-screened to meet our quality standards. Performance is also monitored regularly to make sure you receive professional, quality work. Your satisfaction is a top priority at AHS.

**Q. What if I'm not satisfied with the services?**

A. AHS will work with you until you are satisfied or we will refund the amount of the trade service call fee.

**Q. Can I access my account online?**

A. Yes. Simply go online to www.ahsservice.com, and you can request repair services, make payments, view your account status and more.

# AHS Customers and Contractors Speak Up

## CUSTOMERS

"Having the [AHS] home warranty has provided a significant level of comfort knowing that we are covered should we experience any unexpected breakdowns in our covered home systems or appliances."

**Grace and Larry**
**Homeowners, San Jose area**

"Our AHS home warranty is extremely valuable – It's paid for itself many times over. All of our home problems have been covered."

**JoAnn Haws**
**Homeowner, Portland area**

"AHS was very responsive and demonstrated a high level of service. But the part we liked best was the cost savings! Without an AHS home warranty, we would have paid so much more."

**Karen Ferreira**
**Homeowner, San Diego, CA**

## CONTRACTORS

"Home warranties are one of the most valuable assets a homeowner can have. It saves money and ensures the homeowner that the repairs are going to be made by professional contractors."

**Tracy Artley**
**AHS contractor**

"The typical service fee is far less expensive than what our service technicians charge for parts and labor by the hour. It's not even close."

**George Valdenegro**
**AHS contractor**

"With an AHS Home Warranty, homeowners will usually have more items covered and at a lower cost when compared to individual extended warranty plans."

**Eddy Carpenter**
**AHS contractor**

# EXHIBIT 3

**Billy Gaudet**

| | |
|---|---|
| **From:** | norepl[illegible]hslink.com |
| **Sent:** | Friday, July 09, 2010 12:03 PM |
| **To:** | Billy Gaudet |
| **Subject:** | Service Request Confirmation |

```
*** PLEASE DO NOT REPLY TO THIS EMAIL USING THE REPLY FEATURE ***
_________________________________________________________________

Thank you for using American Home Shield's Service Center

Dispatch Information                        Service Fee
_____________________________________________________
 Dispatch Number : 171580402               $    60.00
  Service Contractor Assigned
     Vendor Name : TRADEMASTERS INC
           Email : TRADEMASTERS@TRADEMASTERS-INC.NET
           Phone : (504) 443-5082
Service Item(s)
            Evap (Swamp) Cooler
            Air Conditioning (Central-Electric)

_____________________________________________________
                                           $    60.00

***WHAT CAN YOU EXPECT TO HAPPEN NOW? READ HERE AND FIND OUT.***
_________________________________________________________________
```

1. You can expect to hear from your contractor within normal business hours to schedule a mutually agreeable appointment time. We've provided your contractor's name and phone number (above) so you can call them should you have any questions about the appointment. Remember, a service fee will be due and payable directly to the contractor when he arrives at your home.
2. Next, the technician will diagnose the problem and report his findings to American Home Shield.
Once it is determined that the reason for the failure of your system or appliance is covered by your warranty, the contractor will start working to resolve the issue.
Remember, there may be items associated with your repair or replacement that are not covered by American Home Shield. When that happens, AHS will let you know this information and the associated costs.
3. If the failure of the system or appliance is covered under your warranty, and it can be repaired the contractor will repair the problem. If the problem can not be repaired, we'll replace the equipment.
Remember, sometimes parts have to be ordered to either repair or replace and this process may take several business days.
4. If parts or equipment is needed an order will be placed and the contractor will schedule a time to come back and complete the repair or replacement.
5. Finally, AHS will contact you to make sure the repair or replacement is complete.

The list below highlights your AHS home warranty coverage. Please refer to your contract for specific details concerning this coverage.
- Ranges, Ovens, Cooktops
- Built-in Microwaves
- Trash Compactors
- Water Heater
- Dishwashers
- Clothes Washer and Clothes Dryer
- Garbage Disposals
- Water Softener
- Garage Door Opener
- Central Vacuums
- Ductwork
- Plumbing

- Electrical System
- Steam/Water Heat
- Heating System
- Ceiling Fans
- Air Conditioning
- Removal of Defective Equipment
- Permits ($250 Per Occurrence)
- Refrigerator

Additional charges apply to some repairs and replacements.

The above service professional has been assigned to your service request. The service contractor will contact you to schedule the service to be performed during normal business hours.

Please allow them time to schedule your repair. If you should miss their call, you can contact them at the above number.

If you should request AHS to perform a non-emergency service outside of normal business hours, you will be responsible for payment of additional fees, including overtime.

If you should need to cancel this service request for any reason prior to the technician's arrival and it is within 24 hours of the service request submission, you may use our online Customer Service Center to cancel the service.

Otherwise, please contact our Customer Service Center at 1-800-776-4663.

**Tom Schedler**
**Secretary of State**

**State of Louisiana**
**Secretary of State**

**COMMERCIAL DIVISION**
**225.925.4704**

Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
|---|---|---|---|
| AMERICAN HOME SHIELD CORPORATION | Business Corporation (Non-Louisiana) | WILMINGTON | Active |

**Business:** AMERICAN HOME SHIELD CORPORATION
**Charter Number:** 32417360 F
**Registration Date:** 11/6/1978
**State Of Origin:**
**Domicile Address**
1209 ORANGE STREET
WILMINGTON, DE 19801
**Mailing Address**
889 RIDGE LAKE BLVD.
MEMPHIS, TN 38120
**Principal Business Office**
889 RIDGE LAKE BLVD.
C3- 1840
MEMPHIS, TN 38120
**Registered Office in Louisiana**
5615 CORPORATE BLVD., STE. 400B
BATON ROUGE, LA 70808
**Principal Business Establishment in Louisiana**
5615 CORPORATE BLVD., STE. 400B
BATON ROUGE, LA 70808

## Status

**Status:** **Active**
**Annual Report Status:** **In Good Standing**
**Qualified:** 11/6/1978
**Last Report Filed:** 10/29/2010
**Type:** Business Corporation (Non-Louisiana)

## Registered Agent(s)

| | |
|---|---|
| **Agent:** | C T CORPORATION SYSTEM |
| **Address 1:** | 5615 CORPORATE BLVD., STE. 400B |
| **City, State, Zip:** | BATON ROUGE, LA 70808 |
| **Appointment Date:** | 11/19/1993 |

## Officer(s)

**Additional Officers: Yes**

| | |
|---|---|
| **Officer:** | MARK F. LIGHTFOOT |
| **Title:** | Director, Secretary, Vice-President |
| **Address 1:** | 889 RIDGE LAKE BLVD. |

EXHIBIT
tabbies
B

| | |
|---|---|
| **City, State, Zip:** | MEMPHIS, TN 38120 |

| | |
|---|---|
| **Officer:** | DAVID J. CRAWFORD |
| **Title:** | Officer, President |
| **Address 1:** | 889 RIDGE LAKE BLVD. |
| **City, State, Zip:** | MEMPHIS, TN 38120 |

| | |
|---|---|
| **Officer:** | LAURA J. CLARK |
| **Title:** | Vice-President, Treasurer, Officer |
| **Address 1:** | 889 RIDGE LAKE BLVD. |
| **City, State, Zip:** | MEMPHIS, TN 38120 |

## Amendments on File (6)

| **Description** | **Date** |
|---|---|
| Stmt of Chg or Chg Prin Bus Off | 2/22/1985 |
| Stmt of Chg or Chg Prin Bus Off | 4/1/1986 |
| Stmt of Chg or Chg Prin Bus Off | 8/28/1989 |
| Stmt of Chg or Chg Prin Bus Off | 10/8/1991 |
| Stmt of Chg or Chg Prin Bus Off | 5/28/2002 |
| Stmt of Chg or Chg Prin Bus Off | 1/29/2008 |

Print