-UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WILLIAM and BRIGETTE GAUDET; JAY ARNESEN, on behalf of themselves and all others similarly situated, | * | COMPLAINT-CLASS ACTION |
| | * | No. 11-1857 |
| Plaintiffs, | * | SECTION "N" (1) |
| v. | * | CONSOLIDATED WITH: No. 12-1781 |
| AMERICAN HOME SHIELD CORPORATION, | * | JUDGE: ENGLEHARDT<br>MAGISTRATE JUDGE: SHUSHAN |
| | * | DEMAND FOR JURY TRIAL |
| Defendant. | * | |

**<u>AMENDED CONSOLIDATED COMPLAINT</u>**

Plaintiffs William and Brigette Gaudet and Jay Arnesen bring this Class Action Complaint, on behalf of the Classes defined herein, against American Home Shield Corporation and The ServiceMaster Company (collectively, "AHS").

**NATURE OF THE ACTION**

1. AHS is a service-warranty provider that specializes in home-service warranties. Standard AHS contracts cover the repair and replacement needs of appliances and systems after a malfunction or breakdown. Plaintiffs bring this action as a result of AHS's policy and practice of wrongfully denying claims by fabricating conditions that preclude coverage. In addition, AHS acts in direct conflict with the terms of its warranties by excluding coverage based on conditions lacking a causal relationship to needed repairs. Finally, AHS engages in an elaborate scheme of providing temporary and substandard repairs thereby ensuring future breakdowns and service fees.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction under diversity of citizenship pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs are citizens of states different from the Defendants. Further, greater than two-thirds of the class members reside in states other than the states in which the Defendants are citizens.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events and omissions giving rise to the claims occurred in this district; and in that all the Defendants, who are corporations, reside in this State and in this district, because the Defendants:

a. Are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of their products and services in this district;

b. Do substantial business in this district; and

c. Are therefore subject to personal jurisdiction in this district.

Venue is also proper in this district because Case No. 11-1857 was removed to this Court pursuant to 28 U.S.C. § 1441(a), and Case No. 12-1781 was subsequently transferred to this district under the first-to-file rule.

## PARTIES

4. At all times relevant to this matter, Plaintiffs William and Brigette Gaudet, husband and wife, were resident citizens of the State of Louisiana and owned a residential property in New Orleans, Louisiana. The Gaudet Plaintiffs at all relevant times had a service

warranty with AHS covering appliances and systems located at the aforementioned property. During the class period, the Gaudet Plaintiffs had claims for coverage improperly denied and lost money as a result of AHS's breaches of contract described herein.

5. At all times relevant to this matter, Plaintiff Jay Arnesen was a resident citizen of the State of New Jersey and owned a residential property in Pompano Beach, Florida. Plaintiff Arnesen at all relevant times had a service warranty with AHS covering appliances and systems located at the aforementioned property. During the class period, Plaintiff Arnesen had claims for coverage improperly denied and lost money as a result of AHS's unfair and deceptive trade practices and breaches of contract described herein.

6. Defendant American Home Shield Corporation is incorporated in the State of Delaware with its principal place of business in Memphis, Tennessee. American Home Shield Corporation promotes, markets, distributes, and sells home-service warranties in the States of Louisiana and Florida, and throughout the United States.

7. Defendant The ServiceMaster Company is incorporated in the State of Delaware with its principal place of business in Memphis, Tennessee. The ServiceMaster Company wholly owns American Home Shield Corporation. According to AHS policies, The ServiceMaster Company controls American Home Shield Corporation, subsidiaries of American Home Shield Corporation, and other affiliates providing home services.

## FACTUAL ALLEGATIONS

8. AHS is a home-service-warranty provider serving over one million customers and specializing in "home protection plans." AHS's contracts purport to cover the repair and replacement needs of home appliances and systems due to "normal wear and tear." AHS describes its protection plans as service contracts that cover "the repair or replacement of many

of the home system components and appliances that break down over time." Moreover, AHS's purported goal is for customers to have "confidence that a certain problem is dealt with before it even occurs." AHS represents that its customers will receive prompt and quality service from the company's employees and service contractors. Standard booklets accompanying the AHS warranty contract state, "Performance [of service contractors] is also monitored to make sure you receive professional, quality work."

9. When appliances covered under the contract break down, AHS customers must endure a multistep process in order to obtain coverage. First, customers must call an AHS representative. AHS will then contact a local service provider, usually an independent contractor, to set up an appointment with the customer to examine the defective appliance. After the contractor makes a determination as to the cause of the problem, AHS finally decides whether to extend or deny coverage. Each visit by the local service contractor incurs a flat fee regardless of coverage.

10. The home warranties issued by AHS are largely standardized and are substantially uniform throughout the United States.[1] The first section of AHS's standard contract is labeled "Coverage." According to this section, repair or replacement of appliances and systems is conditioned on the items being:

a. Located within the confines of the main foundation of the home (with certain exceptions, such as air conditioners);

b. Inoperative due to normal wear and tear;

c. In good working order on the effective date of the contract; and

[1] A copy of Plaintiff Arnesen's service-warranty contract is attached hereto as Exhibit A. A copy of the Gaudet Plaintiffs' service-warranty contract is attached hereto as Exhibit B.

d. Properly maintained and installed throughout the term of the contract for proper diagnosis.

11. AHS also limits coverage toward the end of the contract in the section labeled, "Limitations of Liability." Paragraph 7 of this section states that AHS will not cover repairs or replacements "caused by" "misuse or abuse" or "failure to clean or maintain." Section 9 of the contract states that AHS is not responsible for "repairs related to inadequacy, lack of capacity, misuse, improper installation, previous repair or design, manufacturer's defect, and any modification to the system or appliance."

12. AHS advertises its services through its website. The company also purchases advertisements on popular search engines, such as Google, that link to AHS's website. The site has a specific section devoted to describing AHS's home-protection plans. The first section labeled "Plans and Pricing" states, "Our home protection plans provide confidence that if a covered item breaks, you may not feel the sudden pinch that comes with appliance and system repairs or replacements - not to mention the stress that comes with finding a qualified service contractor. You just get the confidence that comes with knowing that you've covered this one in advance." The section explains two "key" pieces of information for customers to remember:

a. You do not pay the actual repair or replacement cost for covered items; and

b. Your contract will cover repairs or replacements of covered items, regardless of age, make, or model.

The next section labeled "What's Covered" lists available plans and simply links back to the first "Plans and Pricing" page. The site proceeds with a page devoted to homeowners, which describes AHS's service warranties by stating, "To put it more plainly, unlike homeowners

insurance, a home protection plan covers your major systems and appliances when they break down." The possibility of coverage being denied is not mentioned until the "FAQs" section, which is located on a separate page. The FAQs section does not describe the conditions that would lead to an exclusion of coverage. The only way a customer can find terms that preclude coverage is by downloading a sample contract. Notably, the sample contract covers items damaged by insufficient maintenance whereas actual AHS contracts do not. Otherwise, the sample contract is similar to actual contracts in that conditions excluding coverage have to cause or relate to the needed repair.

**FACTUAL ALLEGATIONS RELATING TO THE CLASSES**

13. AHS's company policy and practice is to deliberately and systematically deny coverage to persons who purchase its home-service warranties, in breach of the terms of those contracts. Claims are typically denied on pretextual grounds of improper maintenance, misuse, failure to clean, or preexisting condition, *i.e.*, components not being in good working order when the policy became effective. In many instances AHS and its service contractors deliberately misdiagnose these conditions. However, even when AHS and its service contractors make accurate diagnoses, AHS still denies coverage when those conditions did not *cause* or *relate to* the repair or replacement that was needed. Customers, often left in emergency situations, then have no choice but to pay large out-of-pocket expenditures to service contractors for the needed repairs.

14. AHS's business model purposely creates incentives for claim denials. Service contractors who deny the most claims are rewarded with more business and cash bonuses. When AHS actually extends coverage, service contractors are paid the same amount regardless of the type of repair or replacement needed. Since the contractors are stuck with the costs of labor and

materials, they are more likely to report a condition that precludes coverage, make inexpensive and inadequate repairs that fall below the industry standard, and recommend a repair when a replacement is actually needed. AHS instructs service contractors to only fix conditions when absolutely necessary. In fact, AHS contractors are directed to withhold the disclosure of conditions that will lead to future breakdowns even when prevention of such a breakdown would be simple and inexpensive. Oftentimes AHS opts for temporary repairs over more permanent ones, even when longer-lasting repairs are more cost effective for the consumer. This ensures more money for AHS and the service contractors because consumers will need more repairs and incur more fees.

15. AHS fails to monitor the performance of service contractors for quality control as represented. The services provided by service contractors on behalf of AHS often fall well below industry standards. Service contractors perform superficial evaluations by only examining parts of entire appliances and systems. Service contractors routinely fail to conduct the testing needed for accurate diagnoses. In addition, customers are often faced with delays in service. When customers' claims are denied, AHS fails to provide meaningful opportunities to appeal, resubmit paperwork, or have an independent technician offer a second opinion. AHS's call centers are designed to be unhelpful so that customers will eventually give up on their grievances. Consumers are redirected from call center to call center relaying the same complaints to no avail. Although AHS offers refunds of premiums for dissatisfaction, these obstacles make obtaining such refunds practically impossible.

**FACTS RELATING TO NAMED PLAINTIFF JAY ARNESEN**

16. Named Plaintiff Jay Arnesen resides in New Jersey and rents out a residential property located at 2674 Ne 8th Ct, Pompano Beach, Florida. Mr. Arnesen purchased a service-

warranty contract from AHS covering multiple appliances on his Florida property, including his air-conditioning system. The yearly policy became effective on January 12, 2010, and was renewed on January 12, 2011. Mr. Arnesen paid monthly payments of $44.51 toward the annual rate of $534.08. *See* Exhibit A.

17. Mr. Arnesen first discovered problems with his air-conditioning system in July of 2010. Similar to most residential air-conditioning systems, the condenser unit is located outside the home with the rest of the system located inside the home. After Mr. Arnesen contacted AHS to report a problem with the air-conditioning system, AHS assigned AAA All Brands Appliance ("All Brands") to examine the claim. All Brands employee Eric Jones informed Mr. Arnesen that his air-conditioning system was in need of three uncovered, out-of-pocket repairs for the AHS warranty to remain effective. Notably, one of these repairs included the cleaning of the evaporator coil. Mr. Arnesen paid $400 for the three repairs, in addition to a tuneup. Mr. Arnesen also called an AHS representative, who confirmed that the warranty would continue if the repairs were completed. Although requested by Mr. Arnesen, All Brands refused to provide him with a written receipt for the work completed. Mr. Arnesen complained of this in an AHS follow-up survey and also wrote a letter to AHS documenting the repairs.

18. In the winter of 2010, Mr. Arnesen experienced a minor heating issue with the same air conditioner. AHS once again assigned All Brands to the claim. The service contractor resolved the issue, but never mentioned a need for additional maintenance.

19. Mr. Arnesen's air conditioner stopped working in November of 2011. AHS dispatched a service contractor to investigate the claim. The AHS representative examined only the surface of the exterior portion of the condenser unit and failed to conduct any testing. The entire evaluation took place at the exterior of the home. Mr. Arnesen received a call from AHS a

few days later informing him that AHS had voided the warranty for lack of maintenance. AHS specifically cited to a clogged drain line and "failure to maintain" the coil. This was the same coil that had been cleaned by All Brands one year earlier. Mr. Arnesen was not given a meaningful opportunity to appeal the decision or resubmit paperwork. When Mr. Arnesen called AHS to complain and seek redress, he was merely redirected from call center to call center to relay the same complaints.

20. Mr. Arnesen called a local technician unaffiliated with AHS to examine the air conditioner. After conducting a thorough test of the air-conditioning system, the technician determined that the air conditioner was leaking Freon. He found no problems with the coil or drain line, which were the reasons AHS cited to void the warranty.

**FACTS RELATING TO NAMED PLAINTIFFS WILLIAM AND BRIGETTE GAUDET**

21. Plaintiffs, Mr. and Mrs. Gaudet, purchased their home located at 38 Lakewood Place, New Orleans, La., on or about August 15, 2007. The residence was only eight years old when purchased, and an inspection by an engineer of the air-conditioning system, as part of the sale, confirmed that all units and parts were in good working condition. Mr. and Mrs. Gaudet purchased a service-warranty contract with AHS, and coverage on their home began on August 16, 2007.

22. Just over one month later, the air-conditioning system failed and was in need of repair or replacement. Despite being well aware that the air-conditioning system had been inspected shortly before the request for service, and despite subsequent confirmation that it was in good working condition as of the time the coverage took effect, AHS denied the claim. The claim was denied improperly with an unsubstantiated excuse that there was "a pre-existing condition," after AHS's representative did nothing more than visually inspect the outside portion

of the unit. Mr. and Mrs. Gaudet, faced with the stifling summer heat, were forced to purchase a new air-conditioning system at a cost of approximately $7,000.

23. The coverage under the AHS service-warranty contract was renewed yearly, with all premiums paid by the Gaudets. In April 2010, the second air-conditioning unit was not blowing cold air and a claim was made with AHS, which after several calls and requests for service finally dispatched a contractor, who stated that the unit was in need of Freon. The contractor proceeded to add Freon. The contractor never stated that the air-conditioning unit was not properly maintained.

24. Shortly thereafter, on or about late June 2010, the second unit had the same issues as reported previously, and another claim was made to AHS by the Gaudets. Once again, after repeated calls and requests for service to no avail, a contractor was dispatched in July 2010. The contractor was advised of the prior work conducted on the unit by a representative of AHS. That contractor, upon information and belief, was Trademasters, Inc. ("Trademasters"). The Trademasters contractor visually inspected the exterior of the unit located outside the house, and said a replacement unit was necessary. After calling AHS, the contractor then told Mrs. Gaudet that AHS had denied the Gaudet's claim because "the unit was not maintained." This was after the contractor had done nothing more than visually inspect the exterior portion of the outside unit.

25. AHS possessed no evidence that a "lack of maintenance" was the cause of the defect(s) requiring replacement. When the contractor was asked if he could inspect the other parts of the system located inside the house, to determine if other parts of the system were the cause of the problem and/or would correct the problem, the contractor stated that he would have

to return at a later time and bill the Gaudets for another service fee of $60. This charge would be imposed in addition to a $60 service fee paid by the Gaudets for the initial inspection.

26. Once more, due to the stifling summer heat, Mr. and Mrs. Gaudet were forced to hire yet another contractor and pay approximately $7,500 to replace the second unit. The contractor who replaced the unit did not find any maintenance issue as the cause for the needed replacement, and confirmed that AHS repeatedly and customarily used that improper excuse to deny claims for repair and replacement.

**CLASS ACTION ALLEGATIONS**

The named Plaintiffs bring this class action on behalf of themselves and on behalf of two Classes of persons designated under Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

27. THE NATIONAL CLASS. Claims are brought on behalf of this Class for breach of contract. This Class consists of:

> All persons residing in the United States who, between October 21, 2009, and the present, purchased or renewed home-service warranty contracts issued by AHS, and who, between October 21, 2009, and the present, were denied coverage under those contracts.

Excluded from the Class are (1) the Defendants, their parents, subsidiaries, affiliates, officers, directors, and employees; and (2) all judicial officers of the United States who preside over or hear this case, and all persons related to them as specified in 28 U.S.C. § 455(b)(5).

28. THE MULTI-STATE SUBCLASS. Claims are brought for this Class under the consumer-protection statutes of twenty-one states and the District of Columbia, on behalf of

persons who, during the class period, resided there. The applicable provisions of these statutes are materially identical. This Class consists of:

> All persons who, between October 21, 2009, and the present, purchased or renewed home-service warranty contracts issued by AHS, and who, between October 21, 2009, and the present, were denied coverage under those contracts while residing in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Idaho, Illinois, Michigan, Missouri, New Hampshire, New Jersey, New York, Oregon, Tennessee, Washington, West Virginia, and Wisconsin.

Excluded from the Class are (1) the Defendants, their parents, subsidiaries, affiliates, officers, directors, and employees; and (2) all judicial officers of the United States who preside over or hear this case, and all persons related to them as specified in 28 U.S.C. § 455(b)(5).

29. Plaintiff Arnesen and the Gaudet Plaintiffs will serve as class representatives for the National Class. Plaintiff Arnesen will serve as class representative for the Multi-State Subclass.

30. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed by amendment or amended complaint.

31. The members of each Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that each proposed Class contains thousands of members.[2] The precise number of Class members is unknown to

---

[2] In its order denying the Plaintiffs' Motion to Remand in the *Gaudet* case, this Court stated, "Defendant has submitted evidence in the form of an affidavit of Christian Morgan, an underwriting manager with Defendant. Mr. Morgan states that based on his review of company

Plaintiffs. However, the precise number and identity of the members of each Class can be ascertained from the books and records of AHS.

32. Common questions of law and fact exist as to all members of each Class that predominate over any questions affecting individual Class members.

33. With respect to the National Class, these questions include, but are not limited to, the following:

a. Whether AHS breached its contracts with the Class members;

b. Whether the claims of the Class members were improperly denied; and

c. Whether the Class members have sustained monetary loss and if so, the measure of that loss.

34. With respect to the Multi-State Subclass, these questions include, but are not limited to, the following:

a. Whether AHS breached its contracts with the Class members;

b. Whether the claims of the Class members were improperly denied;

c. Whether AHS violated applicable consumer-protection statutes in its denial of the Class members' claims; and

d. Whether the Class members have sustained monetary loss and if so, the measure of that loss.

---

data, he estimates that Defendant denied air conditioning claims totaling more than $5,000,000 based on improper maintenance or lack of maintenance and that the total for all claims would be higher." (Doc. 13, at 4-5). Presumably Mr. Morgan's estimate was based on the time between the beginning of the class period in the original *Gaudet* complaint, October 21, 2009, and the filing of his affidavit in opposition to remand. Because of the relatively small amounts of money at issue in the denied AHS customer claims, it is reasonably certain from Mr. Morgan's testimony that the members of each Class number in the thousands.

35. Plaintiffs' claims are typical of the claims of the members of the Class[es] they seek to represent. The Plaintiffs' claims and the claims of the members of each Class all arise from the same event or pattern or practice: AHS's company policy of improperly denying its customers' warranty claims on pretextual grounds of improper maintenance, misuse, failure to clean, and preexisting condition. Plaintiffs and the members of each Class have suffered monetary loss thereby. Plaintiffs' claims are based on the same legal theories as the claims of the Class[es] they seek to represent. Plaintiffs' claims therefore share the same essential characteristics as the claims of the members of the Class[es] they seek to represent.

36. Plaintiffs will fairly and adequately protect the interests of the members of the Class[es] they seek to represent. Plaintiffs have retained counsel who are highly experienced and competent in complex consumer class-action litigation, and Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. Plaintiffs' interests are coextensive with those of the Class[es] they seek to represent, and Plaintiffs have no interests adverse to those of the members of the Class[es] they seek to represent.

37. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. It is desirable to concentrate the litigation of the claims in this forum, because the damages suffered by individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against AHS. It would thus be virtually impossible for the Classes, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.

Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. In contrast, the class-action device provides the benefits of adjudication of these issues in a single proceeding, with economies of scale and comprehensive supervision by a single court.

38. Plaintiffs and their counsel are aware of no litigation concerning the controversy during the proposed class period already begun by or against Class members. This also indicates that the Class members' interest in individually controlling the prosecution of separate actions is minimal.

39. No difficulties are likely to be encountered in managing this action as a class action. The elements of a breach-of-contract claim are substantially identical nationwide. Similarly, the applicable consumer-protection statutes of the specified states and the District of Columbia are substantially identical. As such, there will be no choice-of-law issues. Moreover, the predominating legal and factual questions show that this action will be manageable as a class action. The overarching issue of AHS's company policy regarding the denial of claims will simultaneously resolve the claims of both Plaintiffs and all the Class members.

## COUNT I

## Breach of Contract

40. Plaintiffs reallege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein, and allege as follows on behalf of themselves and the members of the National Class.

41. Plaintiffs, and each member of the National Class, purchased a home-service warranty from AHS, which constituted a valid and enforceable contract. AHS breached its contracts by denying warranty claims by Plaintiffs and the members of the National Class on the

pretextual grounds of failure to maintain, failure to clean, misuse, and preexisting condition, without determining whether those grounds actually existed or had any causal relationship to the needed repairs or replacements.

42. As a proximate result of AHS's breach of its contracts, Plaintiffs and the members of the National Class were caused to pay out-of-pocket for repairs to and replacements of their home appliances and systems.

**COUNT II**

**Violation of Consumer-Protection Statutes**

43. Plaintiff Jay Arnesen realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, and alleges as follows on behalf of himself and the members of the Multi-State Subclass.

44. This cause of action is brought pursuant to the consumer-protection statutes of the states specified herein and the District of Columbia. The applicable provisions of these statutes are materially identical.

45. Plaintiff Arnesen and the Multi-State Subclass members are within the protections offered by these statutes. AHS is subject to the requirements of these statutes.

46. These statutes proscribe unfair, unconscionable, and/or deceptive acts or practices. AHS has violated these statutes by denying the warranty claims of Plaintiff Arnesen and the members of the Multi-State Subclass in the manner described above, which denials constitute unconscionable, unfair, and/or deceptive acts or practices.

47. Plaintiff Arnesen and the members of the Multi-State Subclass have suffered monetary loss as a result of AHS's aforesaid violations of these statutes.

48. Plaintiff Arnesen and the members of the Multi-State Subclass, pursuant to the private-right-of-action provisions of these statutes, assert claims for actual damages, plus reasonable attorneys' fees and costs.

49. These statutes are as follows:

| | |
|---|---|
| Alaska | Alaska Stat. §§ 45.50.471, *et seq.* |
| Arizona | Ariz. Rev. Stat. §§ 44-1521, *et seq.* |
| Arkansas | Ark. Code Ann. §§ 4-88-101, *et seq.* |
| California | Cal. Civ. Code §§ 1750, *et seq.*<br>Cal. Civ. Code §§ 17200, *et seq.* |
| Colorado | Colo. Rev. Stat. §§ 6-1-101, *et seq.* |
| Connecticut | Conn. Gen. Stat. §§ 42-110a, *et seq.* |
| Delaware | Del. Code Ann. Tit. 6, §§ 2511, *et seq.* |
| District of Columbia | D.C. Code §§ 28-3901, *et seq.* |
| Florida | Fla. Stat. §§ 501.201 *et seq.* |
| Hawaii | Haw. Rev. Stat. §§ 480-1, *et seq.* |
| Idaho | Idaho Code Ann. §§ 48-601, *et seq.* |
| Illinois | Ill. Comp. Stat. 505/1, *et seq.*<br>Ill. Comp. Stat. 510/1, *et seq.* |
| Michigan | Mich. Comp. Laws §§ 445.901, *et seq.* |
| Missouri | Mo. Rev. Stat. §§ 407.010, *et seq.* |
| New Hampshire | N.H. Rev. Stat. §§ 358-A:1, *et seq.* |
| New Jersey | N.J. Stat. Ann. §§ 56:8-1, *et seq.* |
| New Mexico | N.M. Stat. §§ 57-12-1, *et seq.* |
| New York | N.Y. Gen. Bus. Law §§349, *et seq.* |

| | |
|---|---|
| Oregon | Ore. Rev. Stat. §§ 646.605, *et seq*. |
| Tennessee | Tenn. Code Ann. §§ 47-18-101, *et seq*. |
| Washington | Wash. Rev. Code §§ 19.86.010, *et seq*. |
| West Virginia | W.Va. Code §§ 46A-6-101, *et seq*. |
| Wisconsin | Wis. Stat. § 100.18<br>Wis. Stat. § § 100.20, *et seq*. |

**PRAYER FOR RELIEF**

50. Wherefore, Plaintiffs, on behalf of themselves and the Class members, ask that the Court:

a. Certify the Classes proposed herein;

b. Appoint Plaintiffs as representatives of the National Class and Plaintiff Arnesen as representative of the Multi-State Subclass;

c. Appoint Plaintiffs' counsel as attorneys for both proposed Classes;

d. Enter judgment awarding Plaintiffs and the Class members monetary damages for their out-of-pocket expenses incurred for repairs and replacements;

e. Award Plaintiffs and the Class members reasonable attorneys' fees and costs; and

f. Provide such further relief as may be just and proper

**JURY DEMAND**

Plaintiffs, on behalf of themselves and the Class members, demand a trial by jury on all issues so triable.

Respectfully submitted,

TAYLOR-MARTINO, P.C.

*/s/ W. Lloyd Copeland*
W. LLOYD COPELAND

Steven A. Martino
Admitted pro hac vice
stevemartino@taylormartino.com
W. Lloyd Copeland
Admitted pro hac vice
lloyd@taylormartino.com
Post Office Box 894
Mobile, Alabama 36601
Phone: (251) 433-3131
Fax: (251) 405-5080

SAXENA WHITE P.A.
Jonathan M. Stein
Florida Bar No. 009784
JStein@Saxenawhite.com
2424 North Federal Highway
Boca Raton, Florida 33471
Phone: (561) 394-3399
Fax: (561) 394-3382

BALKAN & PATTERSON, LLP
Adam M. Balkan
**Trial Attorney**
Florida Bar No. 0044880
ABalkan@balkanpatterson.com
601 S. Federal Hwy, Suite 302
Boca Raton, Florida 33432
Phone: (561) 750-9191
Facsimile: (561) 750-1574

Michael D. Riley
La. Bar No. 17116
mriley@kehoejr.com
833 Baronne Street
New Orleans, Louisiana 70113
Phone: (504) 588-1110
Fax: (504) 588-1954

## CERTIFICATE OF SERVICE

I hereby certify that on this the **17th** day of **August, 2012** the above and foregoing has been electronically filed with the Clerk of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record for Defendants as follows:

Stephen H. Kupperman
skupperman@barrassousdin.com
Sarah L. Rubin
srubin@barrassousdin.com
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, LLC
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
Phone: (504) 589-9700
Fax: (504) 589-9701

John E. Goodman
Admitted pro hac vice
jgoodman@babc.com
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Phone: (205) 521-8476
Fax: (205) 488-6476

*/s/ W. Lloyd Copeland*
W. LLOYD COPELAND