# Exhibit R

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WILLIAM and BRIGETTE GAUDET, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HOME SHIELD CORPORATION, et al.,<br><br>Defendants. | * * * * * * * * * * * * | No. 11-1857<br>CONSOLIDATED WITH: No. 12-1781<br>(ALL CASES)<br><br>SECTION "N" (1)<br><br>JUDGE: ENGELHARDT<br>MAGISTRATE JUDGE: SHUSHAN |

**DECLARATION OF W. LLOYD COPELAND IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

I, W. LLOYD COPELAND, declare as follows:

1. I am a resident of Mobile, Alabama. I have personal knowledge of the facts asserted in this Declaration and would competently testify to their truth.

2. I am an attorney licensed to practice law in the State of Alabama and I have been so licensed since 1975. I am a member in good standing of the Alabama State Bar. I obtained a Bachelor of Arts degree in political science from the University of South Alabama in 1972, and I received a Juris Doctor degree from the University of Alabama School of Law in 1975. I am a senior associate with the law firm of Taylor Martino, P.C. I am one of the attorneys representing the Plaintiffs in the above-styled civil action.

3. My primary areas of responsibility with the Taylor Martino law firm are appellate practice, complex litigation, and complex motion practice. I am peer-review rated AV Preeminent (5.0 out of 5) by Martindale-Hubbell. I am listed in 2012 *Alabama Super Lawyers* in

the area of appellate practice. I am admitted to practice law in the state courts of Alabama; the United States District Courts for the Northern, Middle and Southern Districts of Alabama; the United States Circuit Courts of Appeals for the Seventh, Ninth and Eleventh Circuits; and the Supreme Court of the United States.

4. Since I joined the Taylor Martino law firm in February of 2001, one of my areas of concentration has been class actions. I have participated in the following class actions in the manner described below:

(1) *Carter v. First Tennessee Bank,* Civil Action No. 97-3894 in the Circuit Court of Fayette County, Tennessee. This case involved improprieties in the financing of home satellite systems. A multi-state litigation class was certified, following which the case settled on a multi-state, classwide basis. Recovery per class member varied according to a schedule approved by the court. My law firm served a lead class counsel. Although I was not personally appointed by the Court as class counsel, I performed substantial legal research, writing and analysis in this case.

(2) *Hunter v. Bank One, Dayton, N.A., et al,* in the Circuit Court of Fayette County, Tennessee, Civil Action No. 98-3948. This case involved improprieties in the financing of home satellite systems. A multi-state litigation class was certified, following which the case settled on a multi-state, classwide basis. Recovery per class member varied, with a maximum classwide recovery of $26 million, exclusive of attorney's fees, costs and settlement expenses, which were paid directly by Bank One; additionally, Bank One agreed to cease future door-to-door financing of home satellite equipment, which plaintiffs contended had undue potential for deceptive

practices. My law firm served as lead class counsel. Although I was not personally appointed by the Court as class counsel, I performed extensive legal research, writing and analysis in this case.

(3) *Mitchell v. H & R Block, Inc., et al.*, in the Circuit Court of Mobile County, Alabama, Civil Action No. CV-95-2067. This action asserted claims for breach of contract and breach of fiduciary duty involving H & R Block's Refund Anticipation Loan ("RAL") program. An Alabama-only, statewide litigation class was certified. While this case was pending on H & R Block's appeal of class certification, the appeal was stayed pending settlement efforts. *Mitchell*, along with *Green v. H & R Block*, a Maryland class action, was then combined with *Cummins v. H & R Block*, a West Virginia class action, Civil Action No. 03-C-134 in the Circuit Court of Kanawha County, for settlement purposes in the West Virginia courts in 2006. The proceedings in West Virginia involved a contested Fairness Hearing wherein the settlement was approved over objections. Each Alabama class member who filed a claim received a payment several times larger than the RAL license-fee payment at issue in the case. I was appointed class counsel by the Alabama court for the litigation class, and I was appointed class counsel by the West Virginia court for the settlement class.

(4) *Carnegie v. Household International, Inc., et al.*, in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 98 C 2178. This case arose out of claims of wrongdoing associated with H & R Block's Refund Anticipation Loan ("RAL") program. A national litigation class was certified

asserting claims for RICO and breach of contract. The case was subsequently settled on a national, classwide basis, after full preparation for trial. The maximum recovery per class member was $125 per RAL obtained from H & R Block, depending on the number of claims filed. Total recovery for the class of over 1.7 million members was $39 million. Steve Martino of my law firm and I were among several co-counsel for the plaintiff. I performed innumerable research, writing and analytical tasks in this litigation, and participated in most important decisions regarding the litigation, from 2001 until the settlement was finally effectuated in 2007 when the Seventh Circuit Court of Appeals involuntarily dismissed the appeal of the last objector to the settlement. In approving the settlement, the District Court had this to say about the attorneys representing the plaintiff:

> Since counsel took over the representation of this case following the rejection of the first settlement [when the class was represented by different counsel], they have pursued this case, conducting discovery, hiring experts, preparing for trial, filing motions where necessary, opposing many motions, and representing the class with intelligence and hard work. They have obtained an excellent result for the class.
>
> *Carnegie v. Household Intern., Inc.*, 445 F. Supp. 2d 1032, 1038 (N. D. Ill. 2006).

(5) *Johnson, et al. v. Texaco, Inc., et al.*, Civil Action No. CV-97-004127, CV-01-001516 (consolidated cases), in the Circuit Court of Mobile County, Alabama. This case challenged the underpayment of royalties on gas substances produced from the Hatter's Pond Unit, alleging excessive deductions for processing costs, fees, and expenses. A multi-state litigation class was certified. Subsequently, the case settled on a classwide basis for over $1,600,000, plus future relief for the royalty owners in

the form of reduced cost deductions in calculating royalties. I was appointed by the court as class counsel in this case.

(6) *Moye, etc, et al. v. Exxon Corporation, et al.*, in the Circuit Court of Monroe County, Alabama, Civil Action No. CV-98-20. This case challenged the underpayment of royalties on gas substances produced from the Big Escambia Creek Field, alleging excessive deductions for processing costs, fees and expenses. A multi-state litigation class was certified. Subsequently, the case was settled on a classwide basis for $10.5 million, plus future relief for the royalty owners whereby a valuation methodology was imposed that resulted in increased royalty payments on natural gas liquids, as well as ensuring that gas substances would not be undervalued for royalty payment purposes as a result of affiliate sales. My law firm served as lead class counsel. Although I was not personally appointed by the court as class counsel, I performed numerous research, writing and analytical tasks in this litigation. When objectors moved the United States District Court for the Northern District of Alabama to enjoin the *Moye* settlement, I prepared an application for intervention in the federal case, which was granted, prepared the response to the motion for an injunction, and orally argued the same. The federal court denied the objectors' requested injunctive relief, in *Flowers, et al. v. ExxonMobil Corporation*, Civil Action No. CV05-CO-02317-W (order entered on Dec. 14, 2005).

(7) *Burgman, etc., et al. v. Mission Petroleum Carriers, Inc.*, in the Circuit Court of Mobile County, Alabama, Civil Action No. CV-05-4418. This action arose out of a toxic chemical spill from an overturned tanker truck wherein state and local

authorities ordered a mandatory evacuation of the surrounding area. Plaintiffs brought claims on behalf of businesses for lost profits, on behalf of employees of businesses for lost wages, and on behalf of residents for expenses incurred in connection with the evacuation. A settlement class was certified, and the settlement was approved by the court. Under the settlement, each business and employee which filed a claim received double his, her, or its actual damages; each resident who filed a claim received double damages calculated under a schedule approved by the court. I was appointed by the court as class counsel in this case.

(8) *Trice v. Union Oil Co. of California*, in the Circuit Court of Mobile County, Alabama, Civil Action No. CV-98-89 and CV-2001-1517 (consolidated cases). This case challenged the underpayment of royalties on gas substances produced from the Chunchula Field Unit, because of excessive deductions for processing costs, fees and expenses. Settlement negotiations followed extensive motion practice and the court's announcement that it intended to deny the defendant's motion for summary judgment. A multi-state settlement class was certified and the settlement was approved by the court. The total classwide recovery was over $1.9 million, plus future relief for the royalty owners in the form of reduced cost deductions in calculating royalties. I was appointed by the court as class counsel, and I acted as lead counsel in the litigation and settlement negotiations.

(9) *Holman v. Patina Oil and Gas Corporation, et al.*, in the District Court of Weld County, Colorado, Case No. 02 CV 9. This case was brought on behalf of a class of royalty owners alleging underpayment of royalties for gas substances produced from

the Wattenberg Properties, because of excessive deductions for processing costs, fees and expenses. Following extensive motion practice, the case was settled on a classwide basis. My law firm served as co-counsel for the class, and I took an active role in legal research, writing and analysis.

(10) *Skelton, et al. v. Central United Life Insurance Company*, Civil Action No. CV-2008-900178 in the Circuit Court of Mobile County, Alabama. This case alleged the underpayment of benefits provided in supplemental cancer insurance policies. The policies obligated Central United to pay policyholders a benefit in the amount of the "actual charges" for chemotherapy, radiation and blood used in the treatment of cancer. The case further challenged Central United's practices concerning constant increases in premiums for its policies, which was causing increasing numbers of policyholders to lapse their policies due to unaffordability. A national settlement class was certified and the settlement approved over objections. The centerpiece of the classwide relief consisted of an 86% target loss ratio imposed on Central United by the final judgment, which is actuarially predicted to significantly decrease the frequency and extent of future premium increases for the class as a whole. Classwide relief also included monetary payments tailored to the different circumstances of class members depending on whether they had been paid "actual charges" benefits in the past and had in-force policies or had lapsed their policies. I was appointed by the court as class counsel.

(11) *Coady, et al. v. Central United Life Insurance Company*, Case No. 5291 in the Circuit Court of Fayette County, Tennessee. This case involves the alleged

underpayment of benefits pursuant to "Persistency Bonus and Withdrawal Benefit Riders" issued or assumed by Central United. A multi-state settlement class was certified and the settlement approved after a fairness hearing, during which the objection of the lone objector was stricken for lack of standing. Classwide relief consisted of monetary payments tailored to the different circumstances of class members with lapsed or cashed-in riders, in-force but not matured riders, and fully matured riders, plus a two-year premium freeze for in-force riders. The court's judgment approving the settlement is now final. I was appointed by the court as class counsel.

(12) *Greenwood, et al. v. CompuCredit Corporation, et al.*, No. 4:08-cv-4878 in the United States District Court for the Northern District of California. This case involved allegedly deceptive practices in the marketing of a subprime credit card in violation of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. 1679 et seq., and California's Unfair Competition Law ("UCL"). Plaintiffs proposed a national CROA class and a California-only UCL class. The district court denied the defendants' motion to compel arbitration of the CROA claim. The defendants appealed, and the Ninth Circuit affirmed. The Supreme Court of the United States granted certiorari, and reversed. That terminated the CROA class claim, because under a recent Supreme Court decision, class arbitration is not permissible under the Federal Arbitration Act. I took the lead in drafting and arguing most of the CROA and UCL substantive (non-discovery) filings in this case, with the exception of the

CROA merits brief and oral argument in the Supreme Court, which were handled by specially engaged counsel in consultation with me.

The UCL claim proceeded separately in the district court. A California-only UCL class was certified, class notice was given, extensive discovery was taken, and motions by the defendants for summary judgment, interlocutory appeal, decertification of the class, and other relief were denied. I was appointed as UCL class counsel by the district court. Then, the Supreme Court decided *AT&T Mobility v. Concepcion*, 131 S.Ct. 1740 (2011), which overturned years of settled California law and allowed the *Greenwood* defendants to move to compel arbitration of the UCL claim. After extensive brief filing and oral argument, the district court granted the defendant's motion. We are now proceeding with individual arbitration of the class representative's UCL claim, which is a prerequisite to an appeal of the district court's order compelling arbitration, because the district court has not entered a final judgment. Upon completion of the arbitration and entry of a final judgment, we intend to appeal the order compelling arbitration.

(13) *Hardy, et al. v. WhiteHall Gaming Center, LLC, et al.*, No. 2:10 cv-573-MHT in the United States District Court for the Middle District of Alabama. The plaintiffs assert that electronic bingo machines operated in the Town of White Hall, Alabama, were illegal gambling devices under Alabama law. The action is brought under Ala. Code 1975 § 8-1-150(a), which provides that all contracts founded in whole or in part on a gambling consideration are void, and that any person who has lost money on a wager can recover the money by an action commenced within six months thereafter.

The case seeks certification of a class of Alabama residents who lost money in excess of their winnings playing electronic bingo machines at the White Hall Entertainment Center from August 3, 2009, thru February 3, 2010. A motion for class certification has been filed and extensively briefed. I prepared the motion and the briefs. The motion for class certification is presently under submission.

(14) _Hardy v. IGT, et al._, No. 2:10-CD-901-WKW in the United States District Court for the Middle District of Alabama. Plaintiff asserted that electronic bingo machines operated by the Poarch Band of Creek Indians at casinos in Alabama constituted illegal gambling devices, and the action was brought pursuant to Ala. Code 1975 § 8-1-150(a). A class of all people in the United States who suffered gambling losses playing electronic bingo machines at the Porch Band's casinos in Alabama was proposed. The case was brought against the entities which owned, leased, or operated the electronic bingo machines at the casinos. The case was dismissed because the Poarch Band of Creek Indians was a necessary party, but the Poarch Band could not be joined because it has sovereign immunity.

5. I have extensive experience in class-action litigation, and I am thoroughly familiar with the law and practice applicable to class-action litigation. I have properly discharged my duties as counsel on behalf of the Plaintiffs and the proposed class in this case, and I will continue to do so.

6. My law firm was associated in this case by Mr. Gaudet and the Gaudets' attorney, Michael Riley, after the initial state-court complaint had been filed and after removal to this Court. After the case was removed it was consolidated with the *Arnesen* case which had been

transferred from the United States District Court for the Southern District of Florida. I primarily prepared the Amended Consolidated Complaint and the Second Amended Consolidated Complaint in this case, subject to review by Mr. Martino of our firm and by our Florida co-counsel. In so doing, I extensively researched potential class claims. My co-counsel and I settled on a breach-of-contract claim asserted by a national class, and a claim for the violation of various states' consumer-protection laws asserted on behalf of a multi-state subclass. I conducted research to confirm the suitability of a breach-of-contract claim for assertion by a national class. I also researched the consumer-protection statutes of the fifty states and the District of Columbia, and identified various jurisdictions where those laws (1) do not require reliance as an element; (2) do not prohibit class actions; and (3) appeared sufficiently uniform that a class representative from a single state could assert claims on behalf of the residents of all the jurisdictions and still satisfy the commonality, typicality, predominance, and manageability factors of Fed. R. Civ. Proc. 23(a) and (b)(3). I have since, in preparing the Plaintiffs' motion for class certification, further researched the consumer-protection statutes of those jurisdictions. As a result of that further research, I have considerably reduced the original list of states by identifying nuances of statutory law and case law which would defeat the commonality, typicality, predominance, and manageability factors in a multi-state class action.

7. Our firm has committed, and will continue to commit, substantial resources to representing the proposed class in this case. We have assigned two attorneys to work on this case, Mr. Martino and myself, and divided responsibilities between us in accordance with our particular areas of expertise. Mr. Martino will handle merits discovery and the trial. I will handle legal issues, and the preparation and presentation of legal argument. I have participated

in numerous telephonic conferences and email exchanges with our Florida co-counsel and Mr. Martino regarding law, strategy, and tactics. I have also participated in numerous in-person conferences with Mr. Martino concerning this case. I researched the appropriateness of the written class-certification discovery served by the Plaintiffs, and participated in analyzing the Defendants' written responses. I researched and wrote the section of Plaintiffs' response to Defendants' motion to dismiss Plaintiffs' class-action allegations that addressed the multi-state subclass; the Court ruled in Plaintiffs' favor on this issue.

8. In sum, my law firm has committed, and I have personally committed, substantial resources to the prosecution of the Plaintiffs' claims on a classwide basis, and my law firm and I will continue to do so in the future. My law firm's past experience in handling class actions, as set out in the Declaration of Steven A. Martino, and my personal experience in handling class actions, demonstrate that my law firm and I are willing to invest substantial resources to representing classes for which we are appointed class counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true, and that this declaration was executed in Mobile, Alabama, on March 12, 2013.

W. LLOYD COPELAND